570 So.2d 23 (1990)
Joseph P. MARTINEZ, M.D., Plaintiff-Appellant,
v.
Wayne SOIGNIER, M.D., et al., Defendants-Appellees.
No. 89-233.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Rehearing Denied November 5, 1990.
Writ Denied January 11, 1991.
*24 John H. Weinstein, Opelousas, for plaintiff-appellant.
Juneau, Judice, Hill & Adley, PLC, Marc Judice, Roy, Forrest & Lopresto, Stephen Myers, Lafayette, for defendants-appellees.
Before DOMENGEAUX, C.J., and FORET and KNOLL, JJ.
KNOLL, Judge.
Doctor Joseph P. Martinez, Jr., appeals an adverse jury verdict dismissing his defamation claim against Doctor Wayne Soignier and State Farm Fire and Casualty Company, Soignier's liability insurer. Dr. Martinez is an Opelousas obstetrician/gynecologist who also performs liposuctions and breast augmentations. Dr. Soignier is a board qualified plastic surgeon who practiced in Lafayette. The jury verdict stated as follows:
"We, the Jury find:
1. Is Dr. Martinez a public figure for defamation purposes? Yes X No___
2. Did the statements of Dr. Soignier defame Dr. Martinez? Yes X No___ (If your answer to question 2 is `No' skip question 3)
3. Were all the statements of Dr. Soignier respecting Dr. Martinez subject to either or both the defenses of truth or privilege? Yes X No____
4. We fix the damages of Dr. Martinez, if any, as follows: $275,000[1]"
The trial judge rendered judgment in favor of Dr. Soignier and State Farm and against Dr. Martinez, incorporating the jury verdict. Dr. Martinez then filed motions for a new trial and/or judgment notwithstanding the verdict, contending that the jury verdict was inconsistent and ambiguous. The trial judge denied both post-trial motions. This appeal followed.
On appeal, Dr. Martinez contends that: (1) the jury erred in ruling in favor of Dr. Soignier, particularly finding that Martinez was a public figure and that Dr. Soignier's statements were either truthful or privileged; (2) the trial judge utilized confusing *25 jury interrogatories; (3) the trial judge erroneously granted Dr. Soignier's motion to strike Martinez's claim for treble damages under the Louisiana Unfair Trade Practices Act; and, (4) the trial judge made various improper evidentiary rulings which tainted the jury verdict. We affirm.

FACTS
This litigation involves allegations that Dr. Soignier defamed Dr. Martinez in the course of treating two patients on whom Dr. Martinez had earlier performed breast augmentation surgery.
On November 18, 1980, Dr. Martinez, using a periareolar incision (a semi-circular incision around the nipple and areola of the breast), implanted a "1600 Round" mammary prosthesis, an inflatable prosthesis with the valve located in the front, in each of Beverly Joseph's breasts. Dr. Martinez performed similar surgery, using the same technique and like prostheses, on Janet Duos on August 3, 1982. Both breast augmentation surgeries were performed at Opelousas General Hospital in conjunction with bilateral breast biopsies and a D & C procedure.
On June 7, 1983, Dr. Soignier examined Duos for complaints of asymmetrical breasts and lack of sensation in her nipples. Dr. Soignier did not treat Duos, but issued a written medical report to Peter C. Piccione, Duos' attorney, on December 14, 1983, which was requested in connection with a potential action for medical malpractice against Dr. Martinez.
Dr. Soignier examined Joseph on July 18, 1983, for complaints of pain in both breasts. On August 11, 1983, Dr. Soignier surgically performed a bilateral mammary implant exchange because of breast infections. On October 31, 1983, Dr. Soignier wrote a medical report to Benjamin 0. Burns, Joseph's attorney, for evaluation of a proposed medical malpractice action against Dr. Martinez.
In addition to these two medical reports, Dr. Soignier, joined by three other physicians, sent a letter to the Board of Directors of Opelousas General Hospital, urging them to review the medical charts for bilateral breast augmentations performed by Dr. Martinez at the hospital in connection with breast biopsies, cervical cautery and D & C procedures. After his examination of Joseph and Duos, Dr. Soignier also lodged a complaint against Dr. Martinez with the Louisiana Board of Medical Examiners. These items together with the two written medical reports form the basis of Dr. Martinez's defamation claim against Dr. Soignier.

DEFAMATION
Dr. Martinez contends that the jury erred in finding that Dr. Soignier was not liable for defaming him.
Generally, libel is defamation of a person by publication of any false unprivileged writing or statement which tends to expose him to contempt, hatred, ridicule, or obloquy, or which causes him to be avoided or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation. It includes almost any language which upon its face has a natural tendency to injure the person's reputation. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958).
To maintain an action in defamation, the plaintiff must prove the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La.1988). For purposes of this opinion, Dr. Martinez focuses on issues which primarily involve the elements of falsity, its correlative component, truth, and the question of malice.
As a general rule, a Louisiana appellate court should not disturb the reasonable findings and inferences of fact of a trial judge or jury, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). But when interpretation of a defamatory communication in light of the constitutional requirements is involved, our scope of review is to examine in depth the "statements *26 in issue and the circumstances under which they were made", and to re-examine the evidentiary basis of the trial court's decision in light of the constitutional standards. Mashburn v. Collin, 355 So.2d 879 (La.1977).
The defamatory statements which Dr. Martinez relied upon may be classified into four categories: (1) oral statements from Dr. Soignier to Duos, stating that Dr. Martinez was untrained, unqualified, a "quack" and fraudulent; (2) the letters sent by Dr. Soignier to the attorneys for Joseph and Duos; (3) the letters Dr. Soignier sent to Opelousas General Hospital; and, (4) the complaint Dr. Soignier lodged with the Louisiana Board of Medical Examiners.
Duos testified that Dr. Soignier made disparaging oral comments about Dr. Martinez's training and qualifications to perform breast augmentations, and that he called Dr. Martinez a "quack". In addition, Duos stated that Dr. Soignier would get Dr. Martinez for filing fraudulent insurance claims. Dr. Soignier repeatedly denied these allegations.
Attending any jury trial are questions of fact determination and credibility. One of the difficulties we are initially presented with is a determination of what statements the jury found were defamatory. The jury interrogatories indicate only that Dr. Soignier libeled Dr. Martinez, but that all the statements were either or both subject to the defenses of truth or privilege. Without a specific interrogatory, we do not know whether the jury determined that Dr. Soignier made these particular oral statements to Duos.
When reasonable jurors could certainly differ on the question of whether Dr. Soignier made these statements to Duos, we do not find that we can go beyond this threshhold issue. Since we do not know which oral statements, if any, the jury believed were made by Dr. Soignier to Duos, we do not find it appropriate to make a conjecture about what its findings may have been and whether these conjectured oral statements were defamatory per se.
The second category of statements is composed of the letters written by Dr. Soignier to the attorneys representing Joseph and Duos. These formed the crux of Dr. Martinez's claim, and much of the trial was spent reviewing these two letters sentence by sentence. Each of the letters consists of a medical history, as related by the patient, Dr. Soignier's physical findings, and his medical opinion in each instance.
Prior to our analysis of this aspect of the litigation, we must preliminarily address Dr. Martinez's assertions that Dr. Soignier's actions were the result of plastic surgeons trying to preclude non-plastic surgeons from practicing in the area of plastic and reconstructive surgery. In connection therewith, Dr. Martinez contends that the trial court erred in refusing to admit Dr. Jack Anderson's deposition into evidence.
LSA-C.C. Art. 401 provides:
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Evidence must have some probative value and be reasonably connected to the issue in question. In assessing the relevancy of evidence, the trial court is granted a great deal of discretion. Dubois v. State Through Dept. of Pub. Safety, 466 So.2d 1381 (La.App. 3rd Cir.1985).
Dr. Anderson is an out-of-state ear, nose and throat specialist who does not perform breast augmentations and knew nothing personally of the particular facts of the case sub judice. Dr. Anderson testified in general about a "turf war" in the United States between plastic surgeons and cosmetic surgeons. Clearly, Dr. Anderson's testimony about the competition between plastic and cosmetic surgeons was irrelevant to the particular issue of whether Dr. Soignier defamed Dr. Martinez. After carefully reviewing the proffered deposition of Dr. Anderson, we find no error in the trial court's exclusion of this evidence.
We now turn our attention to Dr. Martinez's assertion that the jury erred in finding that he was a public figure for *27 purposes of defamation. This determination is important because before finding Dr. Martinez was entitled to damages, the jury was required to conclude that Dr. Soignier made the various statements with knowing or reckless falsity, if it found that Dr. Martinez was a public figure. Mashburn, supra. As reiterated in Milkovich v. Lorain Journal Co., ___ U.S. ___, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), "Thus, where a statement of `opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures..., those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth."
In Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court stated:
"The first remedy of any victim of defamation is self-helpusing available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation. Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements then [sic] private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater.
* * * * * *
Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issue involved. In either event, they invite attention and comment."
Referring to Gertz, the Louisiana Supreme Court concluded in Mashburn that a public restaurant actively engaged in advertising and sought commercial patronage was a matter of public interest, and was subject to fair comment. Likewise, in Hicks v. Stone, 425 So.2d 807 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La.1983), our brethern of the First Circuit concluded that the dean of a state college of education was a public figure with regard to his involvement with the university.
In the case sub judice, Dr. Martinez takes issue with the jury determination that he was a public figure, arguing that he is not the subject of notoriety and has not thrust himself into a public controversy. In assessing the public figure issue, Dr. Martinez contends that the trial court erred in allowing Dr. Soignier and his insurer to admit into evidence Yellow Page advertisements which Dr. Martinez carried after Dr. Soignier wrote letters to Duos and Joseph's attorney.
During trial, it is sufficient that a party, at the time the ruling or order of court is made or sought, makes known to the court the action which he desires the court to take and his grounds therefor. LSA-C. CP. Art. 1635. The record shows that although Dr. Martinez objected to the introduction of this evidence, he failed to enunciate the grounds for his objection. In light of such lack of specificity, we find that Dr. Martinez has failed to preserve this alleged error for appellate review.
Notwithstanding, it is undisputed that in 1983 Dr. Martinez advertised in the Yellow Pages that he performed cosmetic breast surgery under numerous advertising headings, namely: Physicians & Surgeons; Physicians & Surgeons Gynecology; Physicians Obstetrics & SurgeonsObstetrics & Gynecology; as well as Physicians & Surgeons Plastic & Reconstructive Surgery. Moreover, although Dr. Martinez denied notoriety, one of the physicians testifying on his behalf commented that women from throughout the United States came to Opelousas for Dr. Martinez to perform breast *28 augmentation surgery. After carefully reviewing the evidence in light of the prevailing jurisprudence, it cannot be denied that Dr. Martinez sought public patronage and that his venture into breast augmentation was a matter of public interest. Considering the totality of the evidence, we cannot say that the jury was manifestly erroneous in its specific finding that Dr. Martinez was a public figure for purposes of defamation.
Having disposed of these related evidentiary questions, we now turn to Dr. Martinez's contention that all of the statements Dr. Soignier made in his letters to the attorneys for Duos and Joseph were false.
The available defenses against an action in defamation are privilege and truth. Desselle v. Guillory, 407 So.2d 79 (La.App. 3rd Cir.1981), writs denied, 412 So.2d 83, 84 (La.1982). A qualified privilege exists as to a communication, even if false, between parties sharing an interest or duty. Id. at 82. To be a valid defense such communication must be made in good faith and without malice. Simms v. Clark, 194 So. 123 (La.App. 1st Cir.1940).
In the case sub judice, Dr. Soignier communicated by letter to the attorneys who were considering whether or not to file medical malpractice actions for Joseph and Duos against Dr. Martinez. A large part of the communications consisted of statements Joseph and Duos made to Dr. Soignier about the course of treatment Dr. Martinez gave them. In connection with this issue, Dr. Martinez argues that Dr. Soignier should have investigated the complaints Joseph and Duos made prior to communicating them to the attorneys. On this issue, the testimonies of Dr. Martinez and Dr. Soignier were diametrically opposed; the former stating he was never contacted and the latter stating that he contacted Dr. Martinez, but he was not provided with the information needed to independently evaluate the complaints. Joseph did not testify and Duos' statements were denied by Dr. Soignier. These evidentiary confrontations are best left for the fact finder's resolution and not ours.
After carefully reviewing the letters involved, Duos' testimony, as well as the medical testimony adduced at trial, we find that there was sufficient evidence for the jury to find that Dr. Soignier's letters to the attorneys representing Joseph and Duos were subject to the defenses of privilege and truth.
Nevertheless, statements in each of the letters of Dr. Soignier merit further comment because of the emphasis placed on them by Dr. Martinez at trial. In Joseph's letter, Dr. Soignier specifically stated that in the surgery he performed to exchange the bilateral mammary implants that, "the implants were placed in backwards [by Dr. Martinez in the initial surgery], and this caused the valves to be protruding into the skin causing tenderness." Dr. Martinez hotly disputed this statement and presented extensive expert medical testimony that the mammary implants he inserted could not have been placed backwards because they were front-loaded, i.e., the valve, by design of the manufacturer, had to be in the front, and by design could not protrude beyond the contour of the implant. It is clear that the jury was presented with conflicting testimony on this issue. Based on this evidence, we cannot say that the jury was clearly wrong in finding that this particular statement of Dr. Soignier was subject to either or both the defense of truth or privilege.
The other specific assertion stressed at the trial was Dr. Soignier's statement that Dr. Martinez stated in his operative report that he removed small amounts of tissue[2] from each of Duos' breasts which showed effects of cystic mastitis and compensated for the lost tissue by inserting 300 cc. mammary implants. In actuality, Dr. Martinez's post-operative notes read, in pertinent part:
"Both breasts were entered through circumareolar incisions. Cystic mastitis was encountered, bilaterally. There was profuse nipple discharge with milky appearing *29 fluid. Biopsies were obtained, bilaterally. There was no gross evidence of malignancy. Through the same incision, 10 mg. Aristocort was inserted plus 300 cc. saline prosthetics containing 250 mg. of Keflin and 10 Solu-Medrol. This will reduce future mastitis. The breasts were closed in layers."
From a careful reading of the operative notes, it is obvious that Dr. Soignier read more into Dr. Martinez's notes than was actually stated. Nevertheless, innuendos abound in the record that Dr. Martinez would get insurance companies to pay for the breast augmentations by performing this operation in connection with breast biopsies and a D & C procedure. After referring to the various medical testimonies presented at trial, the evidence preponderates that it is not common practice to obtain breast biopsies in connection with breast augmentation surgery. Likewise, the evidence more than preponderates that health insurers do not provide benefits for elective breast augmentation surgery. Considering the totality of the record, we cannot say that the jury was clearly wrong in concluding that Dr. Soignier's statement constituted a logical explanation of the operative notes in light of the evidence and inferences which could be drawn therefrom.
The last two categories of statements of a defamatory nature concern Dr. Soignier's complaint to the Louisiana Board of Medical Examiners and an associated letter issued by him and other physicians to Opelousas General Hospital.
Relative to these statements, the parties stipulated as follows:
"That if a representative of the Louisiana State Board of Medical Examiners would appear at trial and testify at the trial of this matter he would state that Dr. Soignier contacted the Board in the summer of 1984 with regard to a possible investigation against Dr. Martinez. Dr. Soignier appeared at the Louisiana State Board of Medical Examiners September 1984 meeting along with two other Physicians specializing in Plastic surgery. The minutes of that September 27, 1984 meeting would reflect that Dr. Soignier accompanied by two Board Certified Plastic Surgeons met with the Board to discuss their concern about Dr. Martinez. They reviewed incidents involving patients with whom they are familiar.
They were requested to furnish the Board with copies of medical records in each case with which they are familiar.
Following their appearance, it was noted that the Board had received two complaints from attorneys representing patients of Dr. Martinez.
The Board did not take any action but decided to await further information from Dr. Soignier and two Plastic Surgeons, and to invite Dr. Buller, Chief of Surgery at one of the hospitals where Dr. Martinez practices, to meet with the Board at its next meeting to discuss this matter."
Subsequent to the Board of Medical Examiners' meeting, Dr. Soignier and three other physicians wrote a letter to Opelousas General Hospital, asking them to review the charts involving breast augmentation surgeries performed by Dr. Martinez.
To preserve an issue for appellate review, it is necessary that the appellant brief the issue. Uniform RulesCourts of Appeal, Rule 2-12.4. We have carefully reviewed Dr. Martinez's brief, and find that although he chronicles these events, he fails to argue how they constituted libel. In the absence of such an argument, we deem them abandoned on appeal.
Nevertheless, assuming for purposes of argument that these communications are properly before us, we find that the jury could have found the communications privileged. LSA-R.S. 37:1287(B) provides:
"No person ... providing information to the board [Louisiana Board of Medical Examiners], whether as a witness or otherwise, shall be held, by reason of having provided such information, to be liable in damages under any law of the state of Louisiana or any political subdivision thereof, unless such information is false and the person providing it knew that such information was false."
*30 In light of the record before us, we cannot say that the jury would have been clearly wrong in finding that this privilege applied to Dr. Soignier, both for his complaint to the Board of Medical Examiners and in his letters written at its request to Opelousas General Hospital.[3]

JURY INTERROGATORIES
Dr. Martinez contends that the third interrogatory on the jury verdict was ambiguous and confusing to the jury.
Interrogatory three states:
"Were all the statements of Dr. Soignier respecting Dr. Martinez subject to either or both the defense of truth or privilege?
 X YES NO ___"
LSA-C.C.P. Art. 1812(B) provides that the trial court shall provide the parties with a copy of the special verdict form and instructions and that the parties shall be given a reasonable opportunity to make objections. Appellants who do not object to the special verdict form are not entitled to raise the issue on appeal. Conner v. Florida Farm Bureau Cas. Ins., 446 So.2d 383 (La.App. 3rd Cir.1984).
We have carefully reviewed the record before us and find no objection by Dr. Martinez to the verdict form utilized by the trial court; therefore, this issue is not properly before us.
In a related argument on this issue, Dr. Martinez suggests in brief that at least three jurors called the trial judge after trial urging him to correct the verdict so that Dr. Martinez would receive $275,000 damages. This argument is outside the scope of the record and not properly before us.
In reaching this decision, we feel compelled, however, to comment on the fact that although the jury interrogatories show that the jury found Dr. Soignier's comments either truthful or subject to privilege, in the very next interrogatory it assessed Dr. Martinez's damages totaling $275,000.
At first blush, we found the verdict inconsistent since the jury found that Dr. Soignier had a valid defense, but yet awarded damages. However, after reviewing the trial court's jury instructions, we find this confusion was corrected. In its instructions the trial court stated:
"If you find Dr. Soignier liable, then you will fix the damages of Dr. Martinez, if any. However, the verdict form asks you to fix the damages of Dr. Martinez, whether Dr. Soignier is liable or not, for the purposes of the reviewing Court." (Emphasis added.)
Since neither litigant objected to this instruction, this issue is not reviewable on appeal. However, we feel further comment is appropriate because of the unnecessary confusion this instruction caused, and to discourage future practice such as this. First, we note that all trial counsel should have objected to this instruction, but fail to do so. An objection at that point would have given the trial judge the opportunity to correct this inadvertent instruction. Unfortunately, the jury remained so instructed, albeit outside the scope of the actual jury verdict. We are convinced this instruction leads to jury confusionthis instruction would lead a jury to believe that not only are they trial jurors, but appellant jurors. We recognize that although the trial judge was acting in good faith "for purposes of the reviewing Court". However, this instruction confused the jury, made our review of the case more complicated, and it was an improper jury instruction. We do not condone nor encourage the procedure used herein.
Dr. Martinez's final arguments regarding the trial court's failure to present the jury with a verdict form which itemized the damage award, and the trial court's refusal to allow the jury to consider punitive damages are moot, since we concluded that the jury was not manifestly erroneous in its *31 determination that Dr. Soignier's comments were either true or privileged.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Dr. Martinez.
AFFIRMED.
NOTES
[1] From the outset, we note that Dr. Martinez did not object to the form of the jury verdict and to the jury instructions which directed the jury to assess damages even if they ruled in Dr. Soignier's favor.
[2] The pathology report shows that tissue measuring 0.6 × 0.4 × 0.2 cm. was removed from the right breast, and tissue measuring 1.2 × 0.4 × 0.3 cm. was removed from the left breast.
[3] Dr. Martinez argues in brief that the trial court erred when it allowed Dr. Darrell Henderson, one of the other plastic surgeons who signed the letter to Opelousas General Hospital with Dr. Soignier, to give hearsay testimony that they sent the letter at the request of the Board of Medical Examiners. At trial, Dr. Martinez failed to object to this testimony on the grounds asserted on appeal. Therefore, this issue is not properly before us.