619 So.2d 69 (1993)
Victor G. GREEN, et al., Plaintiffs-Appellants,
v.
POPEYE'S INC., et al., Defendants-Appellees.
No. 91-1310.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1993.
*71 Saloom & Saloom, Kaliste J. Saloom, III, Lafayette, for plaintiffs-appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Mark L. Riley, Lafayette, for defendant-appellee (Liberty Mutual).
Mathews, Atkinson, Guglielmo, Marks & Day, Charles A. Schutte, Jr., Baton Rouge, for C.M. Miciotto & Son.
Raggio, Cappel, Chozen & Berniard, Stephen Berniard, Lake Charles, for Dugas Partnership.
Allen & Gooch, Arthur I. Robison, Nora M. Stelly, Lafayette, for Popeye's.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, Harmon F. Roy, Philip E. Roberts, Lafayette, for Aetna.
Before LABORDE, THIBODEAUX and WOODARD, JJ.
WOODARD, Judge.
This appeal arises out a suit for damages from an accident where Mark Green, a construction laborer, fell through a hole in the roof of a Popeye's building while attempting to remove metal sheets covering the holes.
The issues on appeal are (1) whether the trial court erred in finding Miciotto was the statutory employer of Mark Green; (2) whether the trial court erred in finding Mark Green was not a borrowed employee; (3) whether the trial court erred in finding Dixiefoods, Inc. not liable for Mark Green's injuries; (4) whether the damages awarded were unjustifiably low; and (5) whether the trial court erred in denying defendants' exception of no cause of action.

FACTS
Mark Green was employed by Minute Man Temporary Services, Inc., and in March, 1986, he was hired by C.M. Miciotto & Son, Inc. as a laborer on a construction project. Miciotto was the general contractor for the construction of a Popeye's restaurant owned by Dixiefoods, Inc. On March 26, 1986, Mark and a co-worker were removing sheet metal from the roof of the building. Mark did not know that some of the sheets were covering holes in the roof, and when his co-worker uncovered one nearby, Mark stepped into it and fell through to the concrete floor below.
Mark suffered brain damage from the accident and has been declared an interdict as a result. Mark's parents, Victor and Patricia Green, filed suit against Popeye's as the franchisor of the restaurant, Dixiefoods as the building owner, and Miciotto as the building contractor, along with several other defendants who are not relevant to this appeal. Liberty Mutual Insurance Company intervened as the worker's compensation insurer of Minute Man.
The trial court found Miciotto to be 100% at fault, but no recovery was allowed because the jury found that Miciotto was the statutory employer of Mark Green. Judgment was rendered dismissing the claims of plaintiffs and Liberty Mutual. Victor and Patricia Green, along with Liberty Mutual, appeal the judgment of the trial court dismissing their claims, and Miciotto has answered the appeal.

STATUTORY EMPLOYER DEFENSE
Plaintiffs and Liberty Mutual contend the trial court erred in finding that Miciotto was the statutory employer of Mark Green.
The Supreme Court, in Berry v. Holsten Well Service, 488 So.2d 934 (La. 1986), set forth a three tier analysis for determining whether a statutory employment relationship exists. The first tier focuses on the scope of the contract work and whether it is specialized or non-specialized. If the contract work is specialized per se, then it cannot be part of the principal's trade, business or occupation, and the principal is not the statutory employer. If *72 the contract work is non-specialized, you then determine whether the contract work is part of the principal's trade, business or occupation. Some of the guidelines for making this determination are (1) whether the contract work is routine and customary; (2) whether the principal has the equipment and/or manpower capable of performing the contract work; and (3) what the practice in the industry is relative to the contract work. Finally, the third tier of analysis requires a determination of whether the principal was engaged in the work at the time of the alleged accident.
Plaintiffs argue that Miciotto did not have the manpower capable of performing the contract work and thus could not be Mark's statutory employer. Mr. Erny Oja, the construction superintendent at the work site, testified at trial that Miciotto had other employees who could do the work Mark was hired to do, but they were working on other projects at the time. The fact that Miciotto could have taken employees from other job sites to do the work Mark was hired to do means Miciotto had employees capable of performing the job.
Mark Green was hired by Miciotto as a general laborer. Miciotto's vice-president testified that Mark's duties were the same as those performed by Miciotto's own general laborers. Thus, Mark's work was part of Miciotto's trade, business or occupation. We find no error in the trial court's determination that Miciotto was the statutory employer of Mark Green.

LIABILITY OF THE PROPERTY OWNER
Plaintiffs next assign as error the finding that Dixiefoods was not liable for Mark's injuries.
Plaintiffs argue that Dixiefoods is liable under La.C.C. art. 2322, which holds the owner of a building strictly liable for the damage occasioned by its ruin as a result of a vice in construction. This argument is without merit. Louisiana jurisprudence holds that La.C.C. art. 2322 does not apply to the construction of a building. A building under construction is not a ruin. Herron v. Lincoln Property Co., 525 So.2d 1189 (La.App. 5 Cir.1988), Temple v. General Insurance Co. of America, 306 So.2d 915 (La.App. 1 Cir.1974), writ denied 310 So.2d 643 (La.1975). There is no evidence that the hole in the roof was a vice or defect. It was there because the building was still under construction and the roof was not yet finished.
Plaintiffs next argue that Dixiefoods is liable for damages under La.C.C. art. 2317, claiming Dixiefoods had custody of the building at the time of the accident. Although the general rule is that an owner of a building under construction does not have custody of the building, Louisiana jurisprudence has recognized an exception to this rule where the owner exercises control over the contractor's methods of operation. Williams v. Gervais F. Favrot Co., 499 So.2d 623 (La.App. 4 Cir.1986), writ denied 503 So.2d 19 (La.1987), Herron, supra.
However, when the owner furnishes the plans and specifications and retains only the right to inspect the job site to insure that the job is being performed in accordance with the specifications, he does not have operational control over the contract work. Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App. 2 Cir.1989), writ denied 556 So.2d 41 (La.1990). Herron, supra. A review of the testimony and the contract between Dixiefoods and Miciotto reveals that Dixiefoods did not exercise control over Miciotto's methods of operation and thus did not have custody of the building. We therefore affirm the judgment of the trial court in favor of Dixiefoods.

DAMAGES
Issues concerning damages were raised by both the plaintiffs and the defendants.
First, defendants argue that the trial court erred in allowing the jury to assess damages for Mark Green when none of the defendants were found liable. They cite this court's decision in Martinez v. Soignier, 570 So.2d 23 (La.App. 3 Cir.1990) writ denied 572 So.2d 94 (La.1991), in support of their argument. In Martinez, the jury instructions *73 asked the jury to fix damages, whether or not the defendant was liable, "for the purposes of the reviewing court." We found this instruction to be confusing and thus held it was error for the trial court to submit a verdict form that asked the jury to fix damages even if the defendant was not liable.
The special verdict forms given to the jury in this case contained no such confusing language. The jury was simply asked to assess Mark's damages. We thus find no error in allowing the jury to determine damages even though they later determined Miciotto was liable, but immune from paying damages under the statutory employer defense.
Plaintiffs contend that the damage amounts assigned for Mark's general damages and Victor and Patricia Green's loss of consortium claims are unjustifiably low. They also assert that the trial court erred in not allowing the jury to consider damages for the emotional distress suffered by Victor and Patricia Green. Because Mark Green's recovery is limited to worker's compensation, these damages issues are moot. Theriot v. Damson Drilling Corp., 471 So.2d 757 (La.App. 3 Cir.1985), writ denied 472 So.2d 907 (La.1985).

BORROWED EMPLOYEE DOCTRINE
Liberty Mutual contends that the trial court erred in finding Mark Green was not a borrowed employee. In Billeaud v. Poleodore, 603 So.2d 754 (La.App. 1 Cir.1992), the court listed the following factors to consider in determining whether an employee is a borrowed employee:
(1) First and foremost, who has the right of control over the employee beyond mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) whether the new employment was over a considerable length of time; (7) whose work was being done at the time of the accident; (8) whether there was an agreement between the borrowing and lending employers; (9) whether the employee acquiesced in the new work situation; and (10) whether the original employer terminated his relationship with or relinquished his control over the employee.
Our review of the record reveals that an agreement existed between Miciotto and Minute Man regarding the lease of labor; Miciotto had the right of control over Mark once he was at the job site; Miciotto furnished the tools and the place to perform the work; Mark was doing labor work for Miciotto at the time of the accident; Minute Man issued Mark's paycheck, but Miciotto provided the actual funds from which Mark was paid; and, Miciotto had the right to refuse a laborer sent by Minute Man or to send one back if his work was unsatisfactory.
Minute Man is in the business of loaning employees to companies which need to hire temporary workers. Companies in the business of providing temporary laborers are "vocational lenders". See Malone, Wex S. and H. Alston Johnson, III, vol. 13, Louisiana Civil Law Treatise, sec. 58, p. 100 (West, 2d Ed.1980); Maryland Casualty Co. v. Liberty Mutual Ins. Co., 254 La. 489, 224 So.2d 465 (La.1969). For these reasons, we find Mark Green was Miciotto's borrowed employee and we reverse the trial court as to this finding.
As a borrowing employer, Miciotto is solidarily liable with Minute Man for the worker's compensation benefits paid to Mark Green. Maryland, supra. However, the jury found that there was an agreement between Minute Man and Miciotto whereby Minute Man agreed to be solely responsible for any worker's compensation benefits Mark Green may be entitled to. Liberty Mutual asserts such a finding constitutes manifest error.
At trial, Mr. Fennis McKeller, owner and president of Minute Man, testified they represented to Miciotto that Minute Man would provide worker's compensation insurance for the temporary employees. He also stated that the cost of the insurance was incorporated into the hourly fee that Minute Man charged Miciotto. Mr. Dennis Gardinier, Miciotto's office manager *74 at the time of the accident, testified that it was his understanding that if a Minute Man worker was injured on the job, Minute Man would pay the worker's compensation claim.
This testimony supports the finding that Minute Man agreed to be solely responsible for worker's compensation benefits. Therefore, the jury's conclusion is not manifestly erroneous.

EXCEPTION OF NO RIGHT OF ACTION
Finally, defendants assert the trial court erred in denying their exception of no right of action as to the individual claims of Victor and Patricia Green. They argue that because the Greens declared personal bankruptcy before the trial, they lost any cause of action they may have had to the bankruptcy court trustee. Plaintiffs argue that the trustee abandoned the claim because the bankruptcy proceedings were concluded before this trial and the trustee decided not to reopen the case in order to pursue the claims. Defendants assert that the claim was not properly abandoned under the bankruptcy rules and that the trustee is still the proper person to assert the claim.
The trial judge denied the exception, stating that the trial court was not the proper place to bring the attack. Had the attack on the bankruptcy been in bankruptcy court on behalf of the creditors, it may have had merit, but the reason the bankruptcy trustee decided not to pursue the claim was not before the trial court. We agree with the trial judge and affirm the denial of defendants' exception of no right of action.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. Costs of this appeal are assessed to appellants, Victor Green, Patricia Green, and Liberty Mutual Insurance Company.
AFFIRMED IN PART; REVERSED IN PART.