708 So.2d 430 (1998)
George FELAN, Plaintiff-Appellee,
v.
F & F TRUCKING, INC. [& Chemical Leaman Tank Lines, Inc.], Defendants-Appellants.
No. 97-983.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1998.
Writ Denied April 24, 1998.
*432 Robert Thomas Jacques, Jr., Lake Charles, for George Felan.
John Fayne Wilkes, III, Lafayette, for F&F Trucking, et al.
Charles V. Musso, Jr., Lake Charles, for Chemical Leaman Tank Lines.
Before DOUCET, C.J., and PETERS and SULLIVAN, JJ.
PETERS, Judge.
The plaintiff, George Felan, brought this workers' compensation claim, alleging that he sustained an injury while in the course and scope of his employment. Felan named F & F Trucking, Inc. (F & F) and Chemical Leaman Tank Lines, Inc. (Chemical Leaman) as his employers. After a hearing, the workers' compensation judge rendered judgment in favor of Felan and against both defendants in solido, awarding temporary total disability benefits from November 21, 1994 through October 20, 1996, and supplemental earnings benefits thereafter; attorney fees; penalties; and costs of the litigation. F & F appeals that judgment, and Chemical Leaman has answered the appeal. The issues presented to this court involve the determination of employer/employee status, duration of temporary total disability benefits, penalties and attorney fees, and forfeiture of benefits under La.R.S. 23:1208 for false statements or representations.

DISCUSSION OF THE RECORD
On November 10, 1994, George Felan was a truck driver and was unloading his load in Ohio. He was injured when he slipped and fell in connection with his attempt to retrieve a sample of the substance he was transporting. In his original claim for workers' compensation benefits, Felan named F & F as *433 his employer. Subsequently, he filed an amended petition to include Chemical Leaman as an employer.
In response to the claim, F & F raised a number of defenses. It first denied that it was Felan's employer and alleged that Chemical Leaman was the true employer. In the alternative, F & F alleged that Felan was an independent contractor and therefore not entitled to compensation. F & F also alleged in the alternative that Felan was a borrowed employee of Chemical Leaman such that Chemical Leaman would be liable in solido to Felan for compensation. Finally, F & F alleged that Felan made material misrepresentations in order to obtain workers' compensation benefits and that pursuant to La.R.S. 23:1208, Felan was precluded from recovering benefits. In its answer to the claim, Chemical Leaman alleged that F & F was the direct employer of Felan and that Chemical Leaman was not responsible for compensation benefits. In the alternative, Chemical Leaman sought indemnity or contribution from F & F, in the event it were held to be an employer.
Thus, the pivotal inquiry in determining liability for workers' compensation benefits concerns the relationships among the parties. The record reveals that Chemical Leaman is in the business of transporting chemicals. Obviously, in order to engage in that business, Chemical Leaman needs tanks, trucks and drivers. The company owns tanks and some trucks but also leases trucks to accomplish its objectives. F & F is in the business of leasing out its trucks and was one of the companies that leased trucks to Chemical Leaman. In fact, F & F's entire fleet of trucks was leased to Chemical Leaman.
Felan's relationship with Chemical Leaman began on August 4, 1994, when he began operating a truck for Chemical Leaman out of the company's Luling, Louisiana facility. The truck he was operating was one he had acquired through a lease-purchase agreement with Power Purchasing, Inc. (PPI), a sister corporation of Chemical Leaman, in which PPI leased the truck to Felan and set up an escrow account to enable him to eventually purchase it. Thus, Felan was subleasing a truck to Chemical Leaman which he was also operating. As the lessors of the trucks, Felan and F & F received a percentage of the profit that Chemical Leaman was paid for delivery of each load.
In addition to supplying the truck, the lessor would often supply the driver or operator. However, in order for a driver to be dispatched from Chemical Leaman, the driver had to meet specific qualifications. Lester Richard, the terminal manager for the Chemical Leaman facility in Sulphur, Louisiana, testified that when F & F supplied a driver, F & F's owner, William F. Roush, would first submit an application for the potential driver to Chemical Leaman. Upon receipt of that application, Chemical Leaman would qualify the driver to drive the Chemical Leaman leased vehicle. The qualification process included verifying a driver's prior employment, sending him for a physical exam and drug screen, conducting a driver interview, running a motor vehicle records check on him, administering a written road test and a road test to him, and sending him to the Chemical Leaman driving school in Indiana. Certain of these qualifications were required by the Department of Transportation. F & F would pay for at least a portion of the costs of the qualification process. If a driver did not become qualified, Chemical Leaman would not allow him to drive a Chemical Leaman leased truck.
The qualification process was similar for other companies from which Chemical Leaman was leasing trucks. Before Felan became a driver for Chemical Leaman in Luling, he had completed the qualification process and had become qualified to pull Chemical Leaman loads.
Felan first became associated with F & F when he and PPI discontinued the lease-purchase agreement because running the truck became unprofitable. Thereafter, an individual from PPI called Richard at the Sulphur facility and informed him that she had a qualified driver in Luling who was looking for a truck to drive and wanted to know if that terminal had any owners that had any trucks available. At that time, F & F had a truck leased to Chemical Leaman that did not have a driver. Richard relayed Felan's name and phone number to Roush, *434 who then contacted Felan, gave him a truck, and told him to go to work. Because Felan had previously been qualified to drive a Chemical Leaman leased truck, his records were transferred from the Luling terminal to the Sulphur terminal, effective October 13, 1994.
On November 10, 1994, while Felan was in Ohio, he slipped and fell on his right side while attempting to retrieve a sample of the product he was unloading. The next day, Felan went to DeGraff Memorial Hospital in New York, where he was diagnosed as having right shoulder and elbow sprain. Felan worked his way back and reported to the Sulphur terminal on November 18, 1994. Felan did not return to work after that date.
Felan subsequently obtained medical treatment, including surgery to repair a torn rotator cuff. On October 21, 1996, Felan's treating physician, Dr. Abimael Perez, a Texas family practitioner, released Felan to return to work with a lifting restriction. As of the trial of this matter, Felan had not received any workers' compensation benefits as a result of the accident.
The workers' compensation judge entered judgment in favor of Felan against F & F and Chemical Leaman in solido for temporary total disability benefits from November 21, 1994 through October 20, 1996, and supplemental earnings benefits thereafter. The workers' compensation judge also awarded attorney fees of $7,000.00, assessed equally between the defendants, and penalties on all unpaid wage benefits as well as penalties on all medical expenses not paid within sixty days. However, the penalties on the untimely-paid medical expenses were assessed solely against Chemical Leaman. F & F appeals, and Chemical Leaman has answered the appeal.

OPINION

Employment Status
The workers' compensation judge concluded that F & F and Chemical Leaman were liable in solido to Felan for workers' compensation benefits based on La.R.S. 23:1061, i.e., statutory/direct employer relationship. The workers' compensation judge found that Chemical Leaman was the "principal" and F & F was the "contractor," as defined in La.R.S. 23:1061, in that Chemical Leaman contracted out the execution of part of its trade, business, or occupation to F & F. Additionally, the workers' compensation judge concluded that F & F was "also an `employer' of George Felan, with the authority to hire and fire, supervise and control, and as the direct payor of wages."
F & F contends that the workers' compensation judge erred in finding that it, and not Chemical Leaman, was Felan's employer. It contends that Chemical Leaman was Felan's sole employer and not statutory employer, and, as such, was solely responsible for workers' compensation benefits. In the alternative, F & F contends that Felan was an independent contractor and not an employee at all. Further, F & F contends that in the event it is found liable for workers' compensation benefits, the workers' compensation judge should have found that Felan was the borrowed employee of Chemical Leaman. Chemical Leaman contends in its answer to the appeal that F & F should be held to be the sole employer of Felan.
A prerequisite to any workers' compensation action is the existence of an employer/employee relationship. Boswell v. Kurthwood Manor Nursing Home, 94-703 (La.App. 3 Cir. 12/7/94); 647 So.2d 630, writ denied, 95-0050 (La.3/17/95); 651 So.2d 267. The burden of proof is on the claimant to establish the relationship by a reasonable preponderance of the evidence. Id. The right to control is the essence of the employer/employee relationship, evidenced by the following four primary factors: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. Id. None of these factors alone is determinative, but the totality of the circumstances must be considered. Id.
F & F contends that Felan was hired by Chemical Leaman and was merely transferred from the Luling terminal to the Sulphur terminal, with F & F being a "straw man" in the middle. We disagree. There is no evidence that Felan could have continued to be dispatched out of a Chemical Leaman *435 terminal had he not been engaged by F & F to drive its truck that was leased to Chemical Leaman. Moreover, the mere fact that Felan had been qualified prior to his association with F & F and that his records were transferred from the Luling terminal to the Sulphur terminal did not amount to a transfer of employment from one facility to another. Rather, Felan's prior qualification merely eliminated one step in the process of Felan driving an F & F truck. Felan testified that Roush hired him to drive the truck. Felan testified that he offered to make an application to Roush when he arrived and that Roush took down his social security number, name and address and said that was the application. Importantly, Roush testified that he was the one who gave Felan the truck and that he was the one who told Felan to go to work.
Additionally, concerning the payment of wages, Roush testified that he pays the driver and that at the end of the year he gives the driver a W-2 that states that the employer is F & F Trucking. Roush testified that he paid Felan.
The evidence also shows that F & F had the power of dismissal. While Chemical Leaman could prevent an F & F driver from pulling Chemical Leaman loads, Chemical Leaman did not have the power to prevent an F & F driver from working for F & F. Although all of Roush's trucks were leased to Chemical Leaman, Roush testified that if Chemical Leaman told him it did not want a driver pulling Chemical Leaman loads anymore, Roush could put the driver to work doing something else, although Roush also testified that if Chemical Leaman could not use a driver, Roush could not use him either. Furthermore, as we appreciate Roush's testimony, if there were a conflict between instructions given to a driver by Chemical Leaman and instructions given to a driver by him, Roush could overrule the instructions given by Chemical Leaman and the driver is supposed to listen to him. In fact, Roush testified that if the driver listens to Chemical Leaman, Roush will probably fire him. While F & F's business was intertwined with Chemical Leaman's business in that all of F & F's trucks were leased to Chemical Leaman and Chemical Leaman could prevent a driver from driving a truck leased to it, clearly the power of dismissal from employment with F & F rested with F & F.
The issue of which company had the power of control is more complicated. The lease between F & F and Chemical Leaman required that the driver of the leased vehicle be subject to Chemical Leaman's complete control. A driver would call in each day to the Chemical Leaman dispatcher to see if there was any work for him, and the driver would take his directions from the Chemical Leaman dispatcher. At least some Chemical Leaman company trucks and leased trucks have a computer satellite system in them which allows for exclusive communication between Chemical Leaman dispatchers and the drivers and allows Chemical Leaman to know exactly where a truck is located. The truck Felan drove had a satellite system in it. Chemical Leaman requires the drivers to report such things as when they are picking up a load, when they are dropping off a load, when they are washing a tank, when they are switching a tank, and when they are broken down. Additionally, Chemical Leaman requires the drivers to submit daily driver logs and Chemical Leaman's bills of lading.
However, the lease between F & F and Chemical Leaman provided that neither F & F nor the drivers used by F & F were employees of Chemical Leaman. Also, the driver and the truck owner have control over how long a driver is going to stay out on the road and over which particular load to haul if there are multiple loads in an area. The driver also has the option of refusing a load, although it appears that refusal of loads could result in the driver being prevented from being dispatched out of the Chemical Leaman terminal or in the driver being punished by being made to come home empty. Additionally, other than abiding by Department of Transportation and Development requirements, a driver is free to do the job however he wants to do it. Most importantly, Roush testified that if he calls his driver and tells his driver not to accept any more loads and to come home, the driver is supposed to listen to him and that he can overrule *436 what Chemical Leaman tells a driver to do. Felan testified that Roush ultimately had the "say-so" about what he did with the truck.
While Chemical Leaman directed Felan in carrying out the assignments, the ultimate power of control rested with F & F. Therefore, we find no manifest error in the workers' compensation judge's implicit finding that F & F was the direct employer of Felan.
F & F contends in the alternative that Felan was the borrowed employee of Chemical Leaman. The factors for determining whether an employee is a borrowed employee are: (1) first and foremost, who has the right of control over the employee beyond mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) whether the new employment was over a considerable length of time; (7) whose work was being done at the time of the accident; (8) whether there was an agreement between the borrowing and lending employers; (9) whether the employee acquiesced in the new work situation; and (10) whether the original employer terminated his relationship with or relinquished his control over the employee. Green v. Popeye's Inc., 619 So.2d 69 (La.App. 3 Cir.1993).
Chemical Leaman had the right to direct the details in carrying out the assignments given to Felan, but Felan was ultimately answerable to and under the control of F & F. Additionally, Felan was selected by F & F, which paid his wages and had the right to fire him. Finally, F & F did not terminate its relationship with or relinquish its control over Felan. The jurisprudence has recognized that in order for an employee to be deemed "borrowed," the general employer must relinquish control to the borrowing employer. Freeman v. Brown's Furniture of Bunkie, 527 So.2d 544 (La.App. 3 Cir.1988). The services Felan performed for Chemical Leaman were a requirement of his employment with F & F. As Roush explained, if Chemical Leaman could not use a driver, Roush could not use him either. Therefore, we find that the workers' compensation judge was not clearly wrong in failing to find that Felan was the borrowed employee of Chemical Leaman.
Finally, we address the issue of whether the workers' compensation judge was clearly wrong in finding that Chemical Leaman was the statutory employer of Felan. Under La.R.S. 23:1061(A), as it read at the time of the accident, when a principal undertakes to execute any work that is a part of its trade, business, or occupation and contracts with any person for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay any employee employed in the execution of the work any workers' compensation which it would have been liable to pay if the employee had been immediately employed by it. Among the factors to be considered in determining whether a statutory employment relationship exists are: (1) the nature of the business of the alleged principal; (2) whether the work was specialized or nonspecialized; (3) whether the contract work was routine, customary, ordinary or usual; (4) whether the alleged principal customarily used its own employees to perform the work or whether it contracted out all or most of the work; (5) whether the alleged principal had the equipment and personnel capable of performing the contract work; (6) whether those in similar businesses normally contract this type of work out or whether they have their own employees to perform the work; (7) whether the direct employer of the claimant was an independent business enterprise which insured its own workers and included that cost in the contract; and (8) whether the principal was engaged in the contract work at the time of the incident. Kirkland v. Riverwood Int'l USA, Inc., 95-1830 (La.9/13/96); 681 So.2d 329.[1]
Chemical Leaman was in the business of transporting chemicals, and it contracted *437 with F & F for the execution of part of that work. Hauling the loads was not specialized work and was routine, customary, ordinary, and usual. At the time of the accident, Chemical Leaman was engaged in the work of transporting chemicals. Therefore, we find no manifest error in the workers' compensation judge's finding that Chemical Leaman was the statutory employer of Felan. Therefore, we find no merit in Chemical Leaman's answer to the appeal.
Additionally, we note that the direct and statutory employers are solidarily liable for the entire amount of compensation owed. Gales v. Gold Bond Bldg. Prods., 493 So.2d 611 (La.1986).

Temporary Total Disability Benefits
F & F contends the workers' compensation judge erred in awarding Felan temporary total disability benefits for almost a two-year period, an amount in excess of the statutory limitation on receipt of those benefits. Specifically, F & F contends that the wording of La.R.S. 23:1221(1)(d) limits temporary total disability benefits to six months unless the claimant files for and obtains an extension.
La.R.S. 23:1221(1)(d) provides:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.
In Eglin v. United Gas Pipeline, 93-1179 (La.App. 3 Cir. 4/6/94); 635 So.2d 599, the plaintiff had never been paid disability benefits. The plaintiff in Eglin was awarded temporary total disability benefits, and the defendant contended that the hearing officer erred in awarding temporary total disability benefits in excess of six months because the plaintiff had failed to submit an extension under La.R.S. 23:1221(1)(d). This court disagreed, stating: "That statute provides guidelines for the cessation of benefits; we find it is not applicable where benefits have never been paid." Eglin, 635 So.2d at 603.
As in Eglin, Felan has not received any compensation benefits. Therefore, pursuant to Eglin, La.R.S. 23:1221(1)(d) is not applicable. Additionally, we note that in this case, the filing of the claim for benefits served the purpose of the requirement for filing the extension, and the workers' compensation judge determined that temporary total disability extended beyond six months since she awarded such benefits for almost a two-year period prior to the date of the hearing on the matter. Requiring Felan to have done anything else in this regard would have been a vain and useless act. This assignment of error is without merit.

Penalties and Attorney Fees
F & F contends that the workers' compensation judge erred in awarding penalties on all unpaid wage indemnity benefits and erred in awarding attorney fees against it. F & F contests these two awards on the basis that they apply only to an employer and that it was not an employer. Having affirmed the finding that F & F is an employer of Felan, we find that this argument is without merit.
F & F also contends that the issue of Felan's status was extremely close and that it should not be penalized for taking the issue to court. Under the facts of this case strongly pointing to F & F's employer status, we find that it was unreasonable for F & F to refuse to pay benefits on the ground that it was not Felan's employer. Additionally, the dispute between the statutory and direct employers over which one owes compensation benefits is not a justifiable basis for withholding benefits from the injured employee. Bowens v. General Motors Corp., 608 So.2d 999 (La.1992); Guillot v. Guillot, 445 So.2d 1270 (La.App. 3 Cir.1984).
F & F also contends that it relied on La.R.S. 23:1208 as a defense for failing to pay benefits. That statute relates to the *438 making of false statements or representations to obtain workers' compensation benefits and the consequences of making such statements. However, we do not find that this statute protects F & F from paying attorney fees and penalties because there is no evidence that this defense played any part in its initial decision to not pay benefits. In fact, F & F only became aware of the alleged false statements or representations after the claim was filed.
Additionally, F & F contends that the award of penalties and attorney fees for nonpayment of medical expenses must be reversed because it was stipulated at trial that this was not at issue. However, the penalties on the unpaid medical expenses were assessed solely against Chemical Leaman, and the record does not reveal what portion, if any, of the attorney fees were assessed for the failure to timely pay the medical expenses. Therefore, we find no error in the award of penalties and attorney fees, and we affirm those awards.

Forfeiture of Benefits
F & F contends that the workers' compensation judge erred in failing to find that Felan violated La.R.S. 23:1208, thus forfeiting any and all rights to workers' compensation benefits.
La.R.S. 23:1208(A) provides in part that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment ... to willfully make a false statement or representation." La.R.S. 23:1208(E) provides in part that "[a]ny employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits...." The only requirements for forfeiture of benefits under La.R.S. 23:1208 are: (1) that there is a false statement or representation, (2) that the statement is willfully made, and (3) that the statement is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Constr. Co., 94-2708, 94-3138 (La.9/5/95); 660 So.2d 7.
Specifically, F & F contends that Felan violated La.R.S. 23:1208 by referring to Chemical Leaman as his employer in the DeGraff Memorial Hospital records, in a contingency fee contract with a firm employed to represent him for workers' compensation benefits, in a Texas claim for compensation, in an attorney fee award form of the Texas Workers' Compensation Commission, and in the initial records of Dr. Perez.
The workers' compensation judge found that this evidence did not amount to any misrepresentations made for the purpose of obtaining benefits. First, we question whether F & F is the proper party to raise any such violations, since listing Chemical Leaman as the employer would not be for the purpose of obtaining any benefit or payment from F & F. In any event, we have concluded that Chemical Leaman was in fact an employer, albeit statutory, of Felan. The facts and circumstances of this case simply do not point to willfully-made false representations regarding employer status but rather to an erroneous determination that Felan had only one "employer." We find that it would be manifestly unjust to require Felan to forfeit benefits simply because he initially erroneously concluded that he had only one employer at the time of the accident. Therefore, we find no manifest error in the workers' compensation judge's determination in that regard.
F & F also contends that Felan violated La.R.S. 23:1208 by denying any prior back injuries on his job placement medical questionnaire; by failing to disclose in his application and in response to interrogatories that he had a prior work accident on July 26, 1990; and by failing to disclose in his application and response to interrogatories his prior work accident at Halliburton Services.
First, we note that the job placement medical questionnaire was filled out in connection with Felan's services for Chemical Leaman, before Felan ever began working for F & F. In any event, the failure to disclose any prior back injuries on the job placement medical questionnaire and on the application does not implicate the forfeiture provisions of La.R.S. 23:1208 but rather the forfeiture provisions of La.R.S. 23:1208.1, since at the time, any such false statements or representations were not made in relation to a pending claim. As explained in Resweber, 660 So.2d 7, La.R.S. 23:1208 applies to *439 any false statement or representation made willfully by a claimant for the purpose of obtaining benefits and is generally applicable once an accident has allegedly occurred and a claim is being made, whereas La.R.S. 23:1208.1 applies to false statements or representations made pursuant to employment-related inquiries regarding prior medical history and not to statements made in relation to a pending claim. In order for forfeiture to occur under La.R.S. 23:1208.1, the written form on which the inquiries about previous medical conditions are made must contain a notice advising the employee that his failure to answer truthfully may result in his forfeiture of workers' compensation benefits under the statute. Neither the job placement medical questionnaire nor the job application have the required notice. Therefore, benefits may not be forfeited under either La.R.S. 23:1208 or La.R.S. 23:1208.1 in connection with the job placement medical questionnaire and job application.
Finally, regarding Felan's failure to disclose in response to interrogatories his prior work accidents, we note that the interrogatories request medical information for only the five years preceding the accident. The accident with Halliburton Services occurred in January of 1981, almost fourteen years before the accident in question. Therefore, there were no false statements or representations made in that regard. Concerning the July 26, 1990 accident, Felan testified that he did not know why he did not disclose that and testified that he guessed he did not think about it. We note that the workers' compensation judge found that the evidence did not amount to any misrepresentations made for the purpose of obtaining benefits, and the workers' compensation judge stated that she did not seriously question Felan's credibility. We find no manifest error in this finding and thus do not find that the failure to disclose the July 26, 1990 accident requires forfeiture of benefits.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the workers' compensation judge. We assess one-half of the costs of this appeal to Chemical Leaman and one-half to F & F.
AFFIRMED.
NOTES
[1] We note that Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96); 681 So.2d 329 has been legislatively overruled by Acts 1997, No. 315, §§ 1 and 2. The changes that were made by that Act do not affect the case now before us. Section 3 of the Act provides that it is to be applied prospectively only.