**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-30955

LARRY J. STEPHENS and CHARLENE STEPHENS,

Plaintiffs-Appellants,

VERSUS

WITCO CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

December 16, 1999

Before EMILIO M. GARZA and PARKER, Circuit Judges, and COBB,
District Judge.[*]

ROBERT M. PARKER, Circuit Judge:

Plaintiffs Larry Stephens ("Stephens") and his wife Charlene
Stephens appeal the summary judgment rendered in favor of defendant
Witco Corporation ("Witco"). We reverse and remand to the district
court.

## I. FACTS AND PROCEDURAL HISTORY

On April 1, 1996, Stephens was seriously injured in an
explosion and fire while he was supervising a crew engaged in
replacing a steel bar joist in an epoxy tank at a Louisiana

---

[*]District Judge of the Eastern District of Texas, sitting by
designation.

1

chemical plant owned and operated by Witco. Stephens was employed by Mundy Contract Maintenance ("Mundy") at the time of the accident and was assigned to work at the Witco plant as Mundy's Project Foreman pursuant to a contract for "construction, maintenance, and plant services" between Witco and Mundy.

Stephens filed suit in Louisiana state court seeking damages. Witco removed the case to federal court on the basis of the diverse citizenship of the parties. Mundy intervened to recover worker's compensation benefits it paid to Stephens as a result of the accident.

Witco moved for summary judgment, arguing that it was Stephens's "statutory employer" under La.R.S. §§ 23:1032 and 1061 and thus immune from tort liability, or, in the alternative, that Stephens was its "borrowed employee," also entitling it to immunity under Louisiana's workers' compensation law. The district court granted summary judgment for Witco, finding that Witco was Stephens's "statutory employer" but did not reach the "borrowed employee" issue. The district court denied a Federal Rule of Civil Procedure 59(e) motion for reconsideration and this appeal followed.

## II. DISCUSSION

### a. Standard of review

We review a grant of summary judgment *de novo*, applying the same criteria used by the district court in the first instance. *See Kemp v. G.D. Searle* & Co., 103 F.3d 405, 407 (5th Cir. 1997). Summary judgment is warranted when "the pleadings, depositions,

2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Firesheets v. A.G. Bldg. Specialists, Inc.*, 134 F.3d 729 (5th Cir. 1998)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Because the basis for federal jurisdiction in this case is diversity of citizenship, Louisiana substantive law applies. *See Kemp*, 103 F.3d at 407. We review the district court's interpretation of state statutes *de novo*, resolving questions of Louisiana law "the way the Louisiana Supreme Court would interpret the statute based upon prior precedent, legislation, and relevant commentary." *Occidental Chemical Corp. v. Elliott Turbomachinery Co., Inc.,* 84 F.3d 172, 175 (5th Cir. 1996).

**b. Statutory Employer Doctrine**

A principal who hires a contractor to perform work that is part of its trade, business, or occupation is a statutory employer of the contractor's employees. *See* LA. REV. STAT. ANN. § 23:1061 (1990). A statutory employer is liable to pay worker's compensation benefits, but is immune from tort liability. *See* LA. REV. STAT. ANN. § 23:1032 (West 1989).

Stephens contends that there are genuine issues of material fact in dispute regarding the existence of a statutory employer relationship between him and Witco. The central question is whether the contract work performed by Mundy was part of Witco's "trade, business or occupation." Neither party disputes the district court's use of the factors set out by the Louisiana

3

Supreme Court in *Kirkland v. Riverwood Intern. USA, Inc.*, 681 So.2d 329 (La. 1996), for interpreting the applicable version of § 1061.[1] We agree that *Kirkland* controls the question before us.

*Kirkland* established a totality of the circumstances test, requiring a fact-intensive consideration of all pertinent factors. *See Kirkland*, 681 So.2d at 336.

> Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
>
> (1) The nature of the business of the alleged principal;
> (2) Whether the work was specialized;
> (3) Whether the contract work was routine, customary, ordinary or usual;
> (4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
> (5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
> (6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
> (7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
> (8) Whether the principal was engaged in the contract work at the time of the incident.

*Kirkland*, 681 So.2d at 336-37.

The district court stated that it "is undisputed that Witco was in the business of chemical manufacturing and that part of its business includes maintaining its facilities." We agree.

The specific task being performed by the individual employee

_____

[1]In 1997, Louisiana amended § 1061 by Acts 1997, No. 315, §§ 1 and 2, legislatively overruling *Kirkland*. *See Felan v. F & F Trucking, Inc.*, 708 So.2d 430, 437 n.1 (La.App.3 Cir. 1998). However, the changes do not affect this case because the amendment expressly provided that the changes applied prospectively only. *See id.*

at the time of the accident is not controlling. *See Lewis v. Exxon Corp.*, 441 So.2d 192, 198 (La. 1983). Rather, the entire scope of the contract work must be considered. *See id.*

Witco argues that the district court was correct in characterizing Mundy's work under the contract as maintenance of the chemical plant. Once that characterization is accepted as undisputed, it follows that factors 2-6 and 8 weigh in favor of Witco. That is, maintenance work is not specialized, it is routine, Witco uses its own employees and equipment for maintenance, chemical plants normally have their own maintenance crews, and Witco had employees engaged in maintenance work at the time of Stephens's accident. However, the record does not support such a simplistic approach. Witco contracted with Mundy for "construction, maintenance and service work." Stephens submitted evidence that Mundy's contract required it to replace structural steel joists, which work was extraordinary, nonroutine, nonrecurring work that is not customarily done by Witco maintenance crews nor by the hypothetical ordinary chemical plant maintenance crew, nor were Witco's employees engaged in joist replacement or construction at the time of Stephens's accident. We conclude that, based on this evidence, there is at least a fact question concerning whether factors 2-6 and 8 weigh in his favor.

Additionally, *Kirkland* asks whether Mundy insured its own workers and included that cost in the contract. *See Kirkland*, 681 So.2d at 337. The parties do not dispute that Mundy is an independent business entity that insured Stephens and included the

5

cost in the contract. The district court found that the arrangement favored statutory employer status. However, we read *Kirkland* to require that such an arrangement be weighed in favor of Stephens's position that he is not Witco's statutory employee. *See id.*

Based on the foregoing, we find that there remain genuine issues of material fact concerning whether or not Witco is Stephens's statutory employer.

## c. Borrowed Employee Doctrine

Witco argued in the alternative that it was entitled to summary judgment because Stephens was its borrowed employee. The district court did not reach this issue, but Witco urges us to affirm the grant of summary judgment on this basis.

Under the borrowed employee doctrine, an employee of one company may become the servant of another if he is transferred by the former to the employ of the latter. In Louisiana, there is a presumption that a general employer such as Mundy retains control of his employees. *See Marzula v. White*, 488 So.2d 1092, 1095 (La. App. 2 Cir. 1986). Although there is no fixed test, case law has relied on the following factors in determining whether the borrowed servant doctrine applies: (1) right of control; (2) selection; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by general employer; (6) which employer's work was being performed at the time in question; (7) agreement between the borrowing and lending employer; (8) furnishing of tools and place of performance of work in question; (9) length of employment; (10)

6

acquiescence by the employee in the new work arrangement. *See, e.g., Green v. Popeye's Inc.*, 619 So.2d 69 (La. App. 3 Cir. 1993).[2] Although the borrowed servant issue has been treated as a question of law, we decline to affirm summary judgment on this alternative basis because questions of fact remain concerning those factors that must be resolved before the factors can be weighed. For instance, Witco contends, based on circumstantial evidence, that it was "fully understood between Witco and Mundy that the Mundy workers were mere payroll employees of Mundy who were loaned to Witco." Stephens offers in reply the language of the Witco/Mundy contract providing that "all persons employed by [Mundy] to perform such work shall be and remain employees of [Mundy] subject to the supervision of [Mundy's] supervisory personnel." Contrariwise, in discussing the payment of wages and power of dismissal factors, Witco invokes the language from the contract which Stephens contests. Because it is necessary for a trier of fact to resolve these desputes before the factors can be weighed, we cannot affirm the district court's summary judgment on this alternative basis.

CONCLUSION

Due to remaining genuine issues of material fact, we reverse the summary judgment in favor of Witco and remand this case for further proceedings.

---

[2]The Louisiana Legislature recently codified the borrowed employee doctrine by enacting LA.REV.STAT. 23:1031(c). *See* La. Acts 315. However, this enactment expressly provides for prospective application from the effective date of June 17, 1997. *Id.* § 3. Because this case arose before Act 315's effective date, the factors articulated in *Green* govern our analysis of the borrowed employee doctrine.

REVERSED and REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting:

The majority asserts that the district court erred in holding that Larry Stephens ("Stephens") was a "statutory employee" of Witco Corporation ("Witco") as a matter of law. I disagree.

Our inquiry into whether Witco was Stephens's "statutory employer," as the majority notes, is governed by *Kirkland v Riverwood Int'l USA Inc.*, 681 So.2d 329 (La. 1996), which provides an eight-factor, totality-of-the-circumstances test. These factors, as the majority notes, are:

(1) The nature of the business of the alleged [statutory employer].
(2) Whether the work was specialized or non-specialized.
(3) Whether the contract work was routine, customary, ordinary, or usual.
(4) Whether the alleged [statutory employer] customarily used his own employees to perform the work, or whether he contracted out all or most of such work.
(5) Whether the alleged [statutory employer] had the equipment and personnel capable of performing the contract work.
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work.
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract.
(8) Whether the principal was engaged in the contract work at the time of the incident.

*Id.* at 337. "No single factor is determinative." *Id.*

In viewing the nature of Stephens's "work" at the Witco plant for purposes of our *Kirkland* inquiry, we look not to the work Stephens was performing at the time of his injury, but rather to the work called for by the contract between Witco and Mundy Contract Maintenance ("Mundy"), Stephens's actual employer. In this inquiry, "[t]he specific task to which [Stephens was] put should not be determinative of his coverage under the act. Instead, the *entire scope of the work contract* must be considered." *Lewis v. Exxon Corp.*, 441 So.2d 192, 197 (La. 1983) (on rehearing) (emphasis added).

The contract between Witco and Mundy provided, *inter alia*:

ARTICLE 1. SCOPE OF WORK   [Mundy] agrees to furnish labor and supervision, needed for the performance of construction, maintenance, and plant services . . .

The district court characterized the scope of the contract work as "ongoing repair work and preventative maintenance." *Stephens v. Witco Corp.*, 1998 WL 274248, at *1, *2 (E.D. La. May 21,

9

1998).  Applying the *Kirkland* factors, the district court held that the contract work: was part of the nature of Witco's business (factor 1), was not specialized (factor 2), was routine (factor 3), was the same as work for which Witco and any hypothetical chemical plant had the necessary employees and equipment necessary (factors 4-6), and that Stephens was performing contract work at the time of the accident (factor 8).  *Stephens,* 1998 WL 272248, at \*2-3.

The majority asserts that "the record does not support" the district court's "simplistic" approach.  Basically, the majority claims that because the contract between Witco and Mundy required Mundy employees to, among many other tasks, replace structural steel bar joints, a type of work which the majority asserts was "extraordinary, non-routine, [and] non-recurring work," factors 2-6 and 8 weigh against statutory employee status.

However, in focusing its attention on one particular task that the contract between Witco and Mundy called for, the majority uses far too powerful a lens.  We are bound by a rationale directing us to look at the entire scope of the contract:

> [A] broader view o f the work as a whole is considerably more reasonable than the narrow view.  The "work" contemplated by the statute can hardly be the individual tasks performed by each worker.  Plaintiff, it is true, was injured while installing a particular device; his employer, however, was engaged in the conversion of a plant from one manufacturing process to another.  The "work" at i ssue here is the employer's work))the construction project.  If Exxon was in the business of plant construction or conversion, it then would be protected by the statute.

*Lewis*, 441 So.2d at 199.  In *Lewis*, the plaintiff was injured while performing a non-specialized, routine function as part of his employer's contract work, which involved completely reconstructing an Exxon chemical plant.  While merely considering the plaintiff's work would have placed him within the definition of a "statutory employee", the Louisiana Supreme Court held that since the contractor's function, completely rebuilding the plant, was specialized and non-routine, Exxon was not the plaintiff's statutory employee.  *Id*.  The same analysis applies to the reverse factual scenario here.  While Stephens may have been involved in a specialized, non-routine function when injured, the contract between Mundy and Witco called almost exclusively for mere "ongoing repair work and preventative maintenance."  *Stephens,* 1998 WL 274248 at \*2.  It is well-settled under Louisiana law

that employees of a contractor hired to perform these functions are the statutory employees of the principal company. *See Hester v. Pioneer Chlor Alkali Co., Inc.*, 955 F. Supp. 656, 659-60 (M.D. La. 1996) (citing cases).

The majority's conclusion is based on its overemphasis of a single portion of the record. The only evidence in the record indicating that the structural steel bar joint replacement Stephens was involved in may have been "non-routine or non-recurring" was a statement by plant manager James Goletz that of the 500 steel bar joints in the Witco plant, only around twenty had been replaced since 1968. However, the remainder of Mr. Goletz's testimony makes clear that Mundy's contract was almost exclusively of a "routine" nature when one takes the focus off bar joists in particular and places it on the many other tasks Mundy employees perform at Witco. As Goletz stated in his deposition:

> Like all [chemical] plants, they require maintenance. You are replacing steel. After 30 years, there is a lot of steel that has to be replaced. If we limit it to a bar joist as being one particular piece of steel . . . maybe it's 20, but steel, there are probably hundreds of pieces that have been replaced.

Any task, no matter how fundamental, can be considered "non-recurring" or "non-routine" when analyzed down to its most minor detail. I believe that *Kirkland* and *Lewis* require a broader scope of inquiry into the nature of the contract work. Accordingly, I believe the district court correctly characterized the scope of work under the Mundy-Witco contract and that its determinations on factors 2-6 and 8 were correct.

The majority also asserts that the district court erred in its analysis on *Kirkland* factor 7, claiming that under its reading of *Kirkland*, the fact that Mundy insured Stephens and included the cost in its contract with Witco weighed against statutory employee status. The district court held that since "Witco was required to reimburse Mundy for premiums it paid for worker's compensation insurance," that factor favored statutory employee status. *Stephens*, 1998 WL 274248 at *3. I agree with the district court.[3] The purpose of the *Kirkland* test is to decide whether Stephens will be

---

[3] In coming to the contrary conclusion, the majority provides no analysis behind its reading of *Kirkland* factor 7.

11

relegated to workers' compensation for injuries suffered at the Witco plant. Since Witco for all practical purposes pays Stephens' workers' compensation premiums, Stephens should be covered by workers' compensation as if he were a Witco employee. *Cf. Gaspard v. Orleans Parish School Board*, 688 So.2d 1298, 1303 (La. Ct. App. 1997) (holding that a plumber was not a statutory employee of a school district in part because the plumber's employer "was an independent business enterprise with its own worker's compensation insurer").

Our job, as defined by the Louisiana Supreme Court, is to decide whether Mundy employees who work at Witco pursuant to the "construction, maintenance, and plant services" contract are Witco's statutory employees for workers' compensation purposes. The majority, in narrowly focusing on the particular job Stephens was performing at the time of the accident, performs the incorrect inquiry. I recognize that, under *Kirkland*, "[a] totality of the circumstances inquiry is frequently difficult to accomplish on motion for summary judgment." *Kirkland*, 681 So.2d at 337.[4] However, in the case at bar, the single piece of evidence relied on by the majority is insufficient to create a genuine issue of material fact on the scope of Mundy's contract work. Therefore, the district court correctly concluded that Mundy employees who work at Witco pursuant to the "construction, maintenance, and plant services" contract and for whom Witco, for all practical purposes, pays workers' compensation insurance, are Witco's "statutory employees" as a matter of law. Accordingly, I dissent.

---

[4] "While [after *Kirkland*] it may be difficult to satisfy one's burden on summary judgment, it is not impossible." *Hester*, 955 F. Supp. at 658-59; *see also Jones v. Vela's Garage & Rental, Inc.*, 717 So.2d 246, 248-49 (La. Ct. App. 1998) (granting summary judgment under the *Kirkland* factors); *Jackson v. Latini Machine Co.*, 960 F. Supp. 1043, 1049 (E.D. La. 1997) ("Sathers has proven the presence of seven of the eight factors pointing to an existence of a statutory employment relationship. The absence of one of the factors is adequately compensated by the presence of the seven other factors. Thus, Sathers has carried its [summary judgment] burden.").