224 So.2d 465

**MARYLAND CASUALTY COMPANY**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY.**

**No. 49489.**

June 9, 1969.

Rehearing Denied June 9, 1969.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-relator.

Elven E. Ponder, William J. Doran, Jr., Baton Rouge, for plaintiff-respondent.

BARHAM, Justice.

Maryland Casualty Company, the workmen's compensation carrier for Baton Rouge Fabricators, Inc., paid a workmen's compensation compromise and settlement to Earl S. Landry, an employee of Fabricators, who was injured while operating equipment leased by Fabricators to Joy Manufacturing Company on a construction job of the latter. Maryland Casualty Company brought this suit against Liberty Mutual Insurance Company, Joy's compensation carrier, for total reimbursement and indemnification or, alternatively, for contribution of one-half the sum expended in the compensation settlement.

At the time of Landry's injury on February 16, 1962, Baton Rouge Fabricators, Inc., made a regular business of renting heavy equipment, with operators, to contractors and others on a temporary basis. According to the statements of Floyd Redman, a field engineer for Joy, and Norman Fugg, a superintendent of Fabricators, which were introduced in lieu of testimony by them, on February 12 Redman in a telephone conversation with Fugg rented a crane from Fabricators for use on Joy's contract for work at the Stauffer Chemical Company plant. The conditions of the rental as expressed in this conversation required Fabricators to provide Joy with a specified type of crane and an operator for the total price or rate of $15.00 per hour. There was no mention of special insurance coverage or indemnification as to either company.[1]

---

1. Joy's purchase order to Fabricators dated February 19, after the verbal contract of February 12 and Landry's injury on February 16, is not admissible to vary the obvious meeting of the minds in the verbal contract of the earlier date.

The crane was delivered to the job, and during the time it was in use there, it was operated solely by Landry until his injury in the course of his employment on February 16.

Liberty Mutual Insurance Company filed a peremptory exception to plaintiff's petition for indemnification or contribution, which recognized that Landry was an employee of both companies but urged that as between the special employer (Joy) and the general employer (Fabricators) the special employer was not legally liable for the compensation benefits paid by the general employer, and cited a Court of Appeal case, Casualty Reciprocal Exchange v. Richey Drilling & Well Service (La.App.3rd Cir. 1962), 137 So.2d 127. The trial court sustained Liberty Mutual's exception of no cause of action, but on appeal the First Circuit reversed under a holding contrary to the Third Circuit case and remanded for a trial on the merits. 194 So.2d 204. We refused writs since that judgment was not final. After trial on the merits and judgment ordering contribution, the First Circuit on appeal held that plaintiff and defendant were solidary obligors as a matter of law, and that plaintiff was entitled to recover one-half of the total amount it had paid to the injured employee under the workmen's compensation settlement. 213 So.2d 72. Noting that the decisions of the two circuits were in conflict, we granted writs.

A preliminary issue raised on this appeal questions whether a workmen's compensation compromise settlement can form the basis for fixing the indebtedness of a third party as a solidary obligor. In Morris v. Kospelich, 253 La. 413, 218 So.2d 316, we held: "* * * If the joint tortfeasor requesting contribution proves that a tort was in fact committed, that the defendant was solidarily liable with him for the amount compromised, and that the amount paid was not in excess of the damage inflicted, he may collect his pro rata share from the other joint tortfeasor by virtue of a separate suit. * * *" The record now before us reflects that the settlement was not excessive, and that no real issue is made by the defendant as to its fairness. Additionally, as required by law, the workmen's compensation settlement was approved by a judgment of court, and it should be accorded even greater respect than a tort compromise. We hold that the settlement by this plaintiff may be the basis for a demand for contribution under a solidary obligation.

The principal issue, however, relates to whether contribution is due between a special employer and a general employer which are solidarily liable to an employee for injuries occurring during special employment. Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (1958), concluded that such an employee may recover from either or both employers, and

that they are solidary obligors as to him. Nevertheless, we are not here concerned with the relationship of the employee to the employers, but rather with the allocation of the ultimate loss as between the employers which were by law solidarily liable for the debt.

Two of our Civil Code articles are particularly pertinent. Article 2103 provides in part: "When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation." Article 2104 states in part: "If one of the codebtors *in solido* pays the whole debt, he can claim from the others no more than the part and portion of each."

The basic legal concept of the relationship of solidary obligors among themselves has had little variance for almost 300 years, from the original source in French law to the present law as constituted in Louisiana. 1 Pothier on Obligations § 264 (Evans' tr. 1853); 1 Domat The Civil Law in Its Nat-

ural Order § 1834 (Strahan's tr. 1861); 1 Aubry & Rau Cour de droit civil français § 298B(4) (La. State Law Institute tr. 1965); 2 Pt. 1 Planiol Treatise on the Civil Law §§ 767–771 (La. State Law Institute tr. 1959). Article 2103, prior to its revision in 1960,[2] was identical with Article 1213 of the Code Napoleon (1804), both providing: "The obligation contracted *in solido* towards the creditor, is of right divided amongst the debtors, who, amongst themselves, are liable each only for his part and portion." Our Article 2104 is identical with Article 1214 of the Code Napoleon. Articles 1213 and 1214 of the French Code and Article 2104 of our Code have not been amended or changed, and our Article 2103 has had only limited amendment (see Footnote 2). These articles have always been similarly interpreted by both the French and the Louisiana jurisprudence and authorities. For example, Aubry and Rau and Planiol interpret Article 1213 of the Code Napoleon (our Article 2103) in almost identical comments as creating a presumption that solidary obligors are bound to contribute to each other in equal proportions.[3] We, like

2. The revision was primarily designed to provide a substantive law base for the enforcement of contribution among joint tortfeasors through the third party demand.

3. "With respect to the rules governing solidary co-debtors, the debt is divided in proportion to the interest of each of them in the object for which the solidary obligation has been contracted; *and as this*

*interest until proof of the contrary is presumed to be equal, the division is made by virile portions, barring proof to the contrary.* Article 1213. This article applies whatever may be the origin of solidarity." 1 Aubry & Rau Cour de droit civil français § 298B(4) (La.State Law Institute tr. 1965). "On what basis is this division made? *As a general rule it is made in equal parts.* This is the mode of partition which should be adopted every time un-

the French, have applied the presumption that the obligation as between solidary co-obligors is equal unless there is an express provision to the contrary or it is clearly demonstrated that their interests are unequal. In fact, the amendment to Article 2103 replaced the term "part and portion" with the French term "virile portion" which connotes equality.

■ The defendant denies contribution, claiming that the plaintiff owes it total indemnification from responsibility and relying upon Civil Code Article 2106, which provides: "If the affair for which the debt has been contracted *in solido*, concern only one of the coöbligors *in solido*, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities [sureties]." Article 2106 has as its source an identical French article, Article 1216 of the Code

Napoleon, both of which have existed without amendment, and the French commentators both before and after codification have been constant in their interpretation.[4] The French have interpreted the source article of our Article 2106 as requiring proof to overcome the presumption that there is a common undertaking and an equal debt among the co-obligors. Planiol and Aubry and Rau [5] speak of the French Article 1216 (our Article 2106) as creating a surety relationship among co-debtors when the solidary debt is contracted in the interest of only one of the co-debtors, but recognize that the one who urges the surety relationship has the burden of overcoming the presumption of the common interest and concern of the solidary obligors. Civil Code Article 2106 becomes operative only under express provision or contract or upon clear demonstration that the obligation is the undertaking of only one of the co-obligors.[6]

---

less there are reasons for choosing another. The law *presumes* that the parts of each in the matter are *equal*; the 'portions' spoken of in Art. 1213 mean *virile portions, equal between themselves.* * * * " 2 Pt. 1 Planiol Treatise on the Civil Law § 767 (La.State Law Institute tr. 1959). (Emphasis supplied.)

4. What Justice Spofford said in Johnson v. Bloodworth, 12 La.Ann. 699, 701, about the French jurists may be apropos here: " * * * When jurists of a race so much addicted to theoretical speculation, and so little addicted to reverence for each other's opinions, draw a conclusion from the Code in which they unanimously concur, we may, perhaps, set it down for an obvious truth."

5. Aubry and Rau cite a Court of Cassation decision. Both the court and the comment under that decision state in essence that when one of the solidary co-debtors is called upon to make contribution for his virile portion, there is a presumption that if by contract, law, or otherwise he is a solidary obligor, he must contribute to his co-obligor who has paid the whole debt, and *it is incumbent upon the one claiming that the debt is entirely the affair of the other to present proof which will overcome such a presumption.* 16 Sirey Recueil général 1889–1891, Cass. civ. 29 Octobre 1890.

6. Argument is made for following the view of the Third Circuit or that of Malone in his book Louisiana Workmen's Compensa-

In the instant case the plaintiff's insured was in the business of renting equipment and labor in expectation of a profit from the lease of this combination. The defendant's insured anticipated benefit and profit from the use of the combination for which it had contracted. There is no proof before this court by express stipulation in contract or from the circumstances of the relationship between the employers or the employer and the employee that this was an undertaking solely for the benefit of one of the co-obligors. Not only is there the presumption that the undertaking was for the benefit of both, but the record is persuasive that their relationship was for mutual benefit.

Neither the general employer nor the special employer may claim indemnification or security from the other. They are solidary obligors as contemplated by Articles 2103 and 2104, and the plaintiff insurer, having paid the whole debt, may claim from the defendant insurer contribution of one-half of that amount.

For the reasons assigned the judgment of the Court of Appeal is affirmed. All costs of this proceeding are to be paid by the defendant.

tion. These views are founded upon particular approaches under public policy or equity, and we find no need to resort to such reasoning in the face of unambiguous codal provisions and positive law. Workmen's compensation law or theory is not resolutory of the relationship between co-obligors with which we are concerned.