WILLIAM S. WALKER     *     NO. 2022-CA-0763

VERSUS     *     COURT OF APPEAL

ANCO INSULATIONS, INC.,     *     FOURTH CIRCUIT
ET AL.

    *     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-07060, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

David Ryan Cannella
Kristopher L. Thompson
Christopher C. Colley
Benjamin Rumph
BARON & BUDD, P.C.
909 Poydras Street, Suite 2100
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLEE

Madeleine Fischer
Ryan E. Johnson
JONES WALKER LLP
201 St. Charles Avenue
51st Floor
New Orleans, LA 70170-5100

Stephen N. Elliott
Michael R. Denton
BERNARD, CASSISA, ELLIOTT & DAVIS
3838 N. Causeway Blvd.
Suite 3050
Metairie, LA 70002

      COUNSEL FOR DEFENDANT/APPELLANT

                              **AFFIRMED**
                              **MAY 03, 2023**

*TGC*

*RLB*

*JCL*

Appellant/Defendant Level 3 Holdings, Inc. f/k/a Peter Kiewit & Sons, Co. (hereinafter "Level 3") seeks review of the trial court's July 20, 2022 judgment entering a jury verdict in favor of Plaintiff, William Walker (hereinafter "Mr. Walker"). After consideration of the record before this Court and the applicable law, we affirm the judgment of the trial court.

## **FACTS AND PROCEDURAL HISTORY**

In July 2021, Mr. Walker was diagnosed with malignant mesothelioma. One month later, Mr. Walker filed a petition for damages against four defendants.[1] He later amended his petition adding approximately thirty defendants.[2] Mr. Walker alleges he contracted mesothelioma as a result of his exposure to asbestos-containing products during work he performed for various employers at industrial work sites over the course of his career as a pipefitter and welder. According to the

---

[1] Mr. Walker's first petition named the following defendants: Anco Insulations, Inc., Barnard Lyons, Lou-Con, Inc., and Taylor Seidenbach, Inc.

[2] Mr. Walker's petition names two categories of asbestos related defendants: (1) asbestos manufacturers, miners, contractors, professional vendors, sellers, suppliers, and/or distributors; and (2) employers, premise owners, and/or executive officers. Level 3 was added under the second category.

1

petition, Mr. Walker "was exposed to injurious levels … at various commercial and industrial locations … from approximately 1967 through 1970."

A seven-day jury trial commenced on May 16, 2022. Mr. Walker's treating physician, Dr. Suma Satti (hereinafter "Dr. Satti") testified by video deposition. She concluded that Mr. Walker's mesothelioma was a result of asbestos inhalation. The jury also heard the testimony of Dr. Brent Staggs (hereinafter "Dr. Staggs"), who was qualified by the trial court as an expert medical witness. Dr. Staggs also opined that Mr. Walker's mesothelioma was a result of asbestos inhalation.

Mr. Walker and his wife, Anna Walker (hereinafter "Mrs. Walker") testified at trial and the jury was also presented with the video depositions of several witnesses.[3]

At the conclusion of trial, the jury returned a verdict in favor of Mr. Walker awarding him the following damages:

| | |
|---|---|
| Past Physical Pain and Suffering: | $750,000.00 |
| Future Physical Pain and Suffering: | $2,500,000.00 |
| Past Mental Anguish: | $2,500,000.00 |
| Future Mental Anguish: | $5,000,000.00 |
| Physical Disability: | $5,000,000.00 |
| Loss of Enjoyment of Life: | $20,000,000.00 |
| Past Medical Expenses: | $462,170.02 |
| Future Medical Expenses: | $546,000.00 |
| TOTAL: | $36,758,170.02 |

The trial court entered a judgment in accordance with the jury verdict on July 20, 2022. After considering the pleadings, testimony, evidence, and law, the trial court

---

[3] The jury heard the testimony of Russel Riley, Jim Schneider, Dwight Corcoran, Dave Punch, Terry Whitlock (hereinafter "Mr. Whitlock"), and Ellis Bourque (hereinafter "Mr. Bourque").

assessed Level 3 liable for 11/21 virile shares and entered judgment in the amount of $19,254,279.23 in favor of Mr. Walker and against Level 3.

Level 3 filed a motion for new trial and in the alternative, motion for remittitur. The trial court denied the motion on August 31, 2022. Level 3 filed a second motion for new trial and alternative motion for remittitur on September 12, 2022.[4] This suspensive appeal followed.[5]

## DISCUSSION

Level 3 appeals the July 20, 2022 judgment and asserts the following five assignments of error: (1) the jury abused its discretion in awarding $35,750,000.00 in general damages; (2) the trial court erred in assigning 11/21 virile shares to Level 3; (3) the trial court erred in including Level 3 as strictly liable on the jury interrogatory; (4) the trial court erred in allowing the deposition of Mr. Bourque to

---

[4] Level 3 improperly filed a second motion for new trial and alternative motion for remittitur, titled "Supplemental and Amending Motion for New Trial, and Alternative Motion for Remittitur…" This Court and other Louisiana appellate courts have held:

> [n]either the Louisiana Code of Civil Procedure nor any other law within our ken or to which we have been cited countenances or permits the filing of a second motion for new trial by the party who has been denied relief on his first motion.

*Roch v. Accent Const. Co.*, 2007-0051, p. 3 (La.App. 4 Cir. 5/30/07), 961 So.2d 1265, 1267 (quoting *Palmer & Palmer v. United Inv. Corp.*, 255 So.2d 611, 612 (La. App. 1 Cir. 1971).

Level 3 filed its second motion for new trial based on "new evidence" arguing that Mr. Bourque, previously thought to be deceased was alive. The trial court held a hearing on Level 3's second motion for new trial, however the record does not include a signed judgment pertaining to Level 3's second motion for new trial. Accordingly, we find Level 3's second motion for new trial both procedurally improper and not properly before this Court on appeal.

[5] A denial of a motion for new trial is not a final, appealable judgment. *See New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 2017-0320, p. 5 (La.App. 4 Cir. 3/21/18), 242 So.3d 682, 688, n. 12 (citations omitted). However, this Court may consider an interlocutory judgment as part of an unrestricted appeal from the final judgment. *Id.* Stated differently, this Court may review an appeal from a denial of a motion for new trial as a final, appealable judgment on the merits of the case if "it is clear from the appellant's brief that [they] intended to appeal the merits of the case." *Succession of Hickman*, 2022-0730, p. 6 (La.App. 4 Cir. 3/15/23), --- So.3d ---, 2023 WL 2521916 at *3 (citing *Clotworthy v. Scaglione*, 2011-1733, p. 3 (La.App. 4 Cir. 5/23/12), 95 So.3d 518, 520). Level 3's appellate brief indicates it is appealing the trial court's July 20, 2022 judgment in favor of Mr. Walker.

be read to the jury; and (5) the trial erred in admitting unauthenticated documents from the National Safety Council. For ease of discussion, we summarize Level 3's assignments of error into the following categories: General Damages; Virile Shares; Strict Liability; and Evidentiary Rulings. We address each in turn.

## GENERAL DAMAGES

Level 3 seeks review of the jury's award of $35,750,000.00 in general damages in favor of Mr. Walker.[6] Specifically, it alleges that the jury's award was improperly based upon "sympathy, emotion, and a desire to punish rather than the law." Level 3 also argues that a review of past awards in similar cases indicates that the general damages award is excessive and improper.

"Prior to questioning the inadequacy or excessiveness of a trial court's general damages award, this Court must first look to the individual circumstances of the current case, not prior awards." *McCloskey v. Higman Barge Lines, Inc.*, 2018-1008, p. 11 (La.App. 4 Cir. 4/10/19), 269 So.3d 1173, 1181 (citation omitted). A jury has broad discretion in awarding damages. *See PVCA, Inc. v. Pacific West TD Fund LP*, 2020-0327, p. 16 (La.App. 4 Cir. 1/20/21), 313 So.3d 320, 332. An award will not be disturbed by this Court unless it is determined, by the record, that the fact finder abused its discretion. *Wainwright v. Fontenot,* 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74. An abuse of discretion occurs if the award "is so disproportionate to the injury that it shocks the conscience." *Wendel v. Travelers Ins. Co.*, 2014-0002, p. 6 (La.App. 4 Cir. 10/8/14), 151 So.3d 828, 834 (internal quotation omitted). This Court must inquire "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the

---

[6] Level 3 is not contesting the award of past and future medical expenses.

4

'much discretion' of the trier of fact." *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1260 (La. 1993) (citations omitted).

We will therefore review the testimony to determine whether the jury abused its discretion in awarding Mr. Walker $35,750,000.00 in general damages. The jury listened and considered the totality of the testimony of Mr. Walker and other witnesses. Mr. Walker testified that he grew up in New Orleans and had been married to his wife since 1962. Mr. Walker has three children, five grandchildren, and eight great grandchildren. He testified that he was aware of his imminent death and stated, "I feel myself going down…" The jury also heard Mr. Walker testify that he can no longer enjoy day-to-day activities such as gardening, playing pool, hunting and fishing, traveling with his wife, playing with his grandchildren, or visiting his family in other states. He emphasized that he chooses to fight his condition, every day, to the best of his ability. Mr. Walker has endured many treatments and invasive surgeries including a PleurX catheter insertion[7] within the wall of his rib cage which remained for three months. Mr. Walker experiences depression and anxiety thinking about his wife living alone following his death. Mr. Walker sleeps only a few hours each night as he lives in constant physical pain and emotional fear of his death.

The jury also heard extensive testimony from Mr. Walker's wife. Mrs. Walker corroborated Mr. Walker's testimony that he could no longer perform normal day-to-day activities because of his condition. She explained how they could no longer see their children and grandchildren in New York as Mr. Walker is

---

[7] The PleurX catheter insertion remains in a patients rib cage/rib wall until a substantial amount of fluid is drained from the lungs to where the patient can breathe. Mr. Walker had a PleurX catheter from July 15, 2021 to September 8, 2021. Dr. Satti testified it was removed based upon a fear of infection at the catheter insertion site.

unable to travel far distances because of his mesothelioma. She further testified that she feared for life without her husband and constantly worried about how many important life celebrations the two had left together. Mrs. Walker described Mr. Walker as a hard working person who never failed to provide for his family.

Dr. Satti's video deposition was also presented at trial. She opined that although Mr. Walker occasionally responded well to monthly immunotherapy treatments,[8] he would die an uncomfortable and painful death from his mesothelioma. She also noted it is likely that Mr. Walker's immune system will eventually stop responding positively to the immunotherapy treatment. She pointed out that he is already experiencing its negative side effects such as nausea, constipation, vomiting, diarrhea, and a kidney infection. Dr. Satti further testified that he is not a candidate for surgery to remove portions of his lungs. Mr. Walker's second expert witness, Dr. Staggs, indicated that a mesothelioma patient's life expectancy is generally between six months and two years following their diagnosis. He noted that Mr. Walker lives each day with extreme discomfort. Mr. Walker, Mrs. Walker, Dr. Satti, and Dr. Staggs' testimony was consistent; Mr. Walker lives with constant pain in his back, ribs, sides, and legs.

The jury also considered the testimony of Mr. and Mrs. Walker regarding his constant fear of imminent death. Mr. Walker was once an active man who enjoyed many hobbies such as gardening, hunting, and playing pool. The jury was presented with photos of Mr. Walker prior to his diagnosis which included photos of him playing pool, enjoying time with his grandchildren, and vacationing with his wife and family. Mr. Walker testified he could no longer partake in the

---

[8] Immunotherapy treatment includes an IV insertion of fluids and medication to help manage a patient's mesothelioma symptoms.

activities he once enjoyed and is limited to the times he can visit with his children and grandchildren. *See McGee v. A C And S, Inc.*, 2005-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775 (determining that "[l]oss of enjoyment of life … refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury").

The jury weighed the testimony of Mr. and Mrs. Walker and reasonably inferred that mesothelioma has caused a detrimental change to Mr. Walker's life. *See McBride v. Lichtenstein*, 2017-0715, p. 25 (La.App. 4 Cir. 12/5/18), 260 So.3d 658, 675. The jury heard and saw the toll that mesothelioma has taken on Mr. Walker both physically and emotionally. The record also reflects that Mr. Walker experiences periods of memory loss and often fails to remember many things as a result of his inability to breathe from his mesothelioma. In one instance, Mr. Walker was shown a photo of himself on vacation with his wife and he could no longer remember where he traveled.[9]

Mr. Walker suffers daily and will continue to suffer as a direct result of his diagnosis of mesothelioma. *See e.g. Blair v. Tynes*, 621 So.2d at 591, 601 (La. 1993) (holding when a jury's findings are reasonable in light of the record reviewed in its entirety, a court of appeal may not reverse). While we recognize that the jury's award of general damages may appear significant in relation to other awards, "this Court is confined by the cases which instruct us to follow the fundamental principle that great deference should be afforded to the factfinder…"

---

[9] This photo, submitted into evidence at trial, captures Mr. and Mrs. Walker on a family trip in Walt Disney World with the Disney character, Goofy.

*Blakes v. Hallmark Specialty Ins. Co.*, 2021-0572, p. 11 (La.App. 4 Cir. 6/15/22), --- So.3d ---, 2022 WL 2155185 *5.

Although Level 3's brief submits multiple damage awards within this jurisdiction that deviate from the award granted to Mr. Walker, it fails to compare the awards of the cases it cites with the degree and length of suffering of Mr. Walker. There is no indication that the jury failed to exercise great care in reaching this verdict.

We do not find that the jury's award is "beyond that which a reasonable trier of fact could asses for the effects of the particular injury to the particular plaintiff" such that the jury abused is broad discretion. *See Guillory v. Lee*, 2009-0075, p. 6 (La. 6/26/09), 16 So.2d 1104, 1117 (*quoting Youn v. Maritime Overseas Corp.*, 623 so.2d 1257, 1261 (La. 1993). There is no evidence to indicate that the jury abused its broad discretion in awarding $35,750,000.00 in general damages to Mr. Walker. Additionally, we are mindful of the fact that general damages awards will fluctuate and increase over time given changes in economic conditions, particularly rampant inflation. *See Coco v. Winston,* 341 So.2d at 332, 335-36.

This Court will not substitute its finding for that of the jury who accepted all the testimony and evidence. *Blakes*, 2021-0572, p. 13, --- So.3d ---, 2022 WL 2155185 *6. "It is not within our purview to substitute our findings for those of the jury chosen by the parties to try their case." *Blakes*, 2021-0572, p. 13, --- So.3d ---, 2022 WL 2155185 *8 (*on reh'g*). This Court has a duty to maintain the sanctity of jury verdicts. *Id*.; *See Plaquemines Par. Gov't v. Getty Oil Co.*, 1995-2452, p. 6 (La. 5/21/96), 673 So.2d 1002, 1006.

Level 3 asserts that the trial court erred in assigning 11/21 virile shares in favor of Mr. Walker and against Level 3. The record indicates Mr. Walker's asbestos exposure occurred between 1967 and 1970, thus pre-comparative fault law governs this case. *See Cole v. Celotex Corp.*, 599 So.2d 1058, 1067-68 (La. 1992). Before addressing Level 3's second assignment of error, a discussion regarding pre-comparative fault law relative to virile shares, joint tortfeasors, and solidary obligors is necessary.

## Pre-Comparative Fault:
## Solidary Obligors,
## Joint Tortfeasors, and Virile Shares

"Under pre-1980 jurisprudence, the term virile share had come to be used as short hand expression for the equal joint-obligor-type liability set forth explicitly in the former article 2873 of the [Civil] Code." 7 La. Civ. L. Treatise, Business Organizations § 2:10. "[S]olidary liability among joint tortfeasors has been a part of the Louisiana civilian tradition for over 150 years." *Touchard v. William*s, 617 So.2d 885, 892 (La. 1993). Prior to Act No. 431 of 1979,[10] a claimant could seek full recovery from any joint tortfeasors, "who were left to seek their respective contribution and indemnity from each other." *Id*. The legal concept of solidary obligors, as instituted in our Civil Code, comes from French law. *See Maryland Cas. Co. v. Liberty Mutual Ins. Co.*, 254 La. 489, 495-96, 224 So.2d 465, 467-68 (1969). Specifically, Article 1213 of Code Napoleon provided that solidary

---

[10] Act No. 431 revised La. C.C. art. 2324 to reaffirm the principle of solidarity liability amongst joint tortfeasors. *Dumas v. State ex rel. Dep't of Culture, Recreation, and Tourism*, 2002-0563, p. 5 (La. 10/15/02), 828 So.2d 530, 533. The revision essentially stated that "the primary effect of solidarly liability is that any tortfeasor may be made to pay the judgment in full for other defendants who are insolvent, unknown, or absent." *Id*., 2002-0563, p. 6, 828 So.2d at 534.

obligors are bound to contribute to each other in equal portions. *Id*., 254 La. at 496, 224 So.2d at 468.

When the negligence of two persons combines to produce the injury of a third, the parties at fault are joint tortfeasors and are liable, *in solido*, to the injured plaintiff. *Harvey v. Travelers Ins. Co.*, 163 So.2d 915, 918 (La.App. 3d Cir. 1964). A solidary obligation is one which each obligor is liable for the whole performance. [11] La. C.C. art. 1794. Prior to Louisiana's Civil Code revision in 1980, Article 2103, amended in 1960, of the Civil Code provided:

> When two or more debtors [obligors] are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or quasi offense, it should be divided between them. As between solidary debtors [obligors], each is liable for their virile portion.

Article 2103 provided that "a tort-feasor may enforce contribution against a cotort-feasors by the use of a third party demand even though the latter was not initially sued by the plaintiff." *Harvey*, 163 So.2d at 920. Thus, if determined that multiple obligors, *in solido*, are liable for a plaintiff's (obligee's) injuries, each obligor is assigned a portion of the debt owed. Accordingly, if five joint torfeasors are found liable for the injuries of a plaintiff, each joint tortfeasor is liable for 1/5 of the damage owed to the plaintiff.

Under pre-comparative fault law a plaintiff may seek recovery or payment in whole from one obligor. *See Harvey*, 163 So.2d at 921. When one obligor pays the entire debt to a plaintiff:

> That one [paying obligor] is entitled to be subrogated the rights of the creditor against the others [non-paying obligor]; [a]nd so far as the creditor has impaired this right of subrogation he is barred from recovering.

---

[11] The revision comments to La. C.C. art. 1794 provides that this article restates the principal contained in La. C.C. art. 2091 from the 1870 Civil Code.

*Id*. (*Citing Ledoux v. Rucker*, 5 La. Ann. 500 (1850)). Therefore, one joint tortfeasor may be liable for the entire debt owed to a plaintiff, but it may seek contribution from other joint tortfeasor for its own individual virile portion. Our Supreme Court has noted:

> [T]he substantive right of action for eventual contribution vests at the time of the delict. This construction would explain how the third party practice is available to the joint tortfeasor sued. Thus the joint tortfeasor has a *right* of action from the time of the tort, but the cause of action matures only on payment. Thus at the time of the delict there is vested one cause of action and two rights of action: the injured party has a right of action and cause of action in tort against the joint tortfeasors; the joint tortfeasors as between themselves have a right of action or title to sue for contribution which includes the right to use the third party practice. If one of the tortfeasors pays in excess of his virile portion his vested interest or right of action matures and he acquires a separate cause of action for contribution against his fellow tortfeasor.

*Cole v. Celotex Corp.*, 599 So.2d 1058, 1070 (La. 1992) (quoting Comment, Contribution Among Joint Tortfeasors: Louisiana's Past, Present, and Future, 37 Tul.L.Rev. 525, 532(1963)). In accordance with *Cole,* a joint tortfeasor has a right of action from the moment the tort occurs. *Id*. Further, the moment a plaintiff seeks payment from a joint tortfeasor, a cause of action accrues between the remaining co-tortfeasors as amongst themselves. *Id*. As to the example with five joint tortfeasors, a plaintiff may seek an entire payment from one joint tortfeasors and that paying joint tortfeasor may then seek contribution from the remaining four obligors for their individual virile portion, i.e., 1/5.

A plaintiff may also settle and release a joint tortfeasor reducing his claim against the other obligors in proportion to the debt owed by the released obligor. *Harvey*, 163 So.2d at 920. Specifically, within a tort claim, the plaintiff may still recover the full debt from another joint tortfeasor, subject to a credit for the amount paid in the settlement by the joint tortfeasor. *Id*. Turning again to the example of

five obligors or joint tortfeasors, a plaintiff may settle and release one obligor for his virile portion, i.e. one share, and may still seek payment from any remaining obligors or joint tortfeasors. The remaining joint tortfeasors are subject to a credit from the settled obligor and would only be liable to the plaintiff for four of the five shares, i.e., 4/5.

Thus, when analyzing pre-comparative fault matters such as the one in the case *sub judice*, courts should consider the above principles in determining issues relative to virile shares, joint tortfeasors, contribution, and virile share credits. With these fundamental principles in mind, we now turn to Level 3's second assignment of error.

On appeal, Level 3 asserts that they should only be liable for 1/11 virile shares based upon a theory that non-parties should not be considered when allocating virile shares. This argument is without merit.

Under pre-comparative fault law, joint tortfeasors are solidarily liable for a tort victim's injury. *Romano v. Metropolitan Life Insurance Co.*, 2016-0954, p. 5 (La.App. 4 Cir. 5/24/17), 221 So.3d 176, 180. Further, a plaintiff can demand the whole performance from any joint and/or indivisible obligor. *Id.*, 2016-0954, p. 5, 221 So.3d at 181.

The jury verdict form listed a total of twenty-seven entities as possible joint tortfeasors who are all solidarily liable for Mr. Walker's asbestos related injuries. The jury determined that twenty-one of the twenty-seven entities were solidarily liable for Mr. Walker's injuries. Ten of the twenty-one entities settled with Mr. Walker (hereinafter "Settled Parties").[12] Another two entities were voluntarily

---

[12] These ten entities included: Chevron Oronite Company, LLC; Entergy Louisiana, LLC; Homer Knost Construction Co., Inc.; Jacobs Construction and Maintenance Contractors, Inc.;

dismissed (hereinafter "Dismissed Parties")[13] and eight entities were not named as parties to this litigation (hereinafter collectively "Non-Parties").[14] Thus, we group the three entities as follows: (1) Settled Parties; (2) Non-Parties; (3) Dismissed Parties. Each will be addressed in turn.

### *Settled Parties*

Mr. Walker's recovery against Level 3 was properly reduced by the ten virile shares of the Settled Parties. *See e.g. Romano*, 2016-0954, p. 6, 221 So.3d at 181. This is known as a virile share credit. "[W]hen [the] plaintiff settle[s] with a joint tortfeasor, the joint tortfeasor [is] also released from paying contribution to the solidary obligor." *Id.*, 2016-0954, p. 5, 221 So.2d at 181. Level 3 received a virile share credit for the ten Settled Parties as the following occurred: (1) Mr. Walker released ten of the twenty-one parties and (2) the released ten parties were found liable for Mr. Walker's asbestos related injuries by the jury at trial. *See Id*; *See also Dempster v. Lamorak Insurance Co.*, No. 2020-0095, 2020 WL 5666697 (E.D. La. Sept. 23, 2020) (concluding that a party is entitled to a "virile share credit if: (1) the plaintiff released the party and (2) the released party is liable as a joint tortfeasor").

Accordingly, a virile share credit does not absolve a party of liability but rather alters the total amount a joint tortfeasor is required to pay a plaintiff. *Harvey*, 163 So.2d at 920. As the jury found the ten Settled Parties to be liable, *in*

---

Occidental Chemical Corporation; Resco Holdings, LLC; Shell Oil Company; Union Carbide Corporation; Witco Chemical Co.; and Westinghouse Electric Co.

[13] The two entities are: Benjamin F. Shaw Co. and E.I. DuPont De Nemours and Co.

[14] These include: Brindell Bruno Inc., Dravo Co.; Ebasco Services, Inc.; Emile M. Babst and Co.; Godchaux Sugars, Inc.; HB Fowler; J & J Construction and Maintenance Contractors, Inc.; and Tompkins Beckwith, Inc.

*solido*, for Mr. Walker's injuries, the trial court properly reduced Level 3's share by 10/21 shares, leaving 11/21 virile shares.

### *Non-Parties*

The jury determined that the Non-Parties were liable, *in solido*, for Mr. Walker's asbestos related injuries and were subsequently cast in judgment by the trial court. Although we are cognizant of the fact that Mr. Walker did not name the Non-Parties in his original petition, Level 3 urged the fault of each of the Non-Parties at trial.[15] "When a defendant urges the fault of a non-party, it is incumbent upon that defendant to provide evidence which preponderates that fault actually exists on the part of the non-party." *Williams v. Placid Oil Co.*, 2016-0839, p. 11 (La.App. 3 Cir. 8/12/17), 224 So.3d 1101, 1108 (*quoting Joseph v. Broussard Rice Mill, Inc.*, 2000-0628, pp. 8-9 (La. 10/30/00), 772 So.2d 94, 99). If multiple causes of injuries are present, a defendant's conduct is a cause in fact if it is a substantial factor in plaintiff's harm. *Abadie v. Metropolitan Life Ins. Co.*, 2000-0344, p. 65 (La.App 5 Cir. 3/28/01), 784 So.2d 46, 90. "There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature." *Id.*, 2000-0344, p. 64, 784 So.2d at 90.

During Mr. Walker's cross-examination, Level 3 posed questions regarding more than thirty-five different entities who employed Mr. Walker as a pipefitter and welder. Of those, Mr. Walker specifically testified being "exposed to" and "breathing in" asbestos fibers while working for the Non-Parties. Specifically, he noted the type of work he performed which included using asbestos blankets,

---

[15] This is known as the empty-chair defense defined by this Court as "a trial tactic in a multiparty case whereby one defendant attempts to put all the fault on a defendant who … settled before trial or on a person who was [not] … a named party." *Pizani v. St. Bernard Parish*, 2012-1084, pp. 7-8 (La.App. 4 Cir. 9/26/13), 125 So.3d 546, 552 (citations omitted).

cutting into asbestos filled insulation, and creating hot welds. The jury reasonably found the actions of the Non-Parties were a substantial factor in Mr. Walker's asbestos exposure. The record contains sufficient evidence that Mr. Walker's injuries were caused by exposure to asbestos containing products at various worksites.[16]

A non-party found liable at trial may be assigned a virile share. *See Abadie*, 2000-0344, p. 71, 784. So.3d at 94 (reversing the trial court's decision to reduce the virile share of a non-party found liable at trial). Joint tortfeasors are assigned a virile share, regardless of whether they were named a party to the litigation. *See Harvey,* 163 So.2d at 918; *See also* La. C.C. art. 2103 (prior to 1980 revisions). Thus, the trial court did not err in allotting one virile portion to each of the Non-Parties.[17]

### Dismissed Parties

As to the Dismissed Parties, this Court finds that Level 3 is not entitled to two extra virile share credits. The Dismissed Parties were found liable, *in solido*, for Mr. Walker's asbestos related injuries but Mr. Walker has not settled with the alleged "Dismissed Parties." An obligor is entitled to a virile share credit when it is shown that the plaintiff settled and released the party and the party is liable as a joint tortfeasor. *See Romano*, 2016-0954, p. 5, 221 So.2d at 181. Thus, upon

---

[16] *See Abadie*, 2000-0344, p. 69, 784 So.3d at 93 (the term exposure in asbestos cases refers to inhalation of asbestos fibers into the lungs).

[17] However upon payment to Mr. Walker, Level 3 has a cause of action against each of the Non-Parties. When the whole performance is sought from a single solidary obligor that solidary obligor may seek "contribution" from other joint tort-feasors "in an amount of the joint tortfeasor's 'virile share.'" *Romano*, 2016-0954, p. 5, 221 So.2d at 181 (citation omitted). Level 3 was cast in judgment owing 11/21 virile shares to Mr. Walker and the jury concluded that the Non-Parties were solidary liable for Mr. Walker's injuries. Accordingly, Level 3 may seek contribution from the Non-Parties for each of their virile portions, i.e. 1/21. *See Harvey*, 163 So.2d at 920; *See also Cole*, 559 So.2d at 1070.

payment to Mr. Walker, Level 3 has a cause of action, in the form of contribution, from the Dismissed Parties. *Id.* Accordingly we find that Level 3 is not entitled to two virile share credits or a reduction of 2/21 shares as Mr. Walker has yet to settle and release the Dismissed Parties.

STRICT LIABILITY

Level 3 asserts that the trial court erred in including strict liability within Jury Interrogatory No. 4.[18]  Specifically, Level 3 avers that it was not a premises owner of the Union Carbide Plant, Waterford I, or Waterford II thus it should not be held strictly liable for Mr. Walker's asbestos related injuries. Jury instructions are reviewed under the manifest error standard. *Fireman's Fund Insurance Co., v. R.S. Homes, L.L.C.*, 2019-0621, pp. 3-4 (La.App. 4 Cir. 3/25/20), 294 So.3d 54, 59. "A trial judge is only required to give a jury instruction which properly reflects the law that is applicable to the facts of a particular case. *Fireman's Fund Ins. Co.*, 2019-0621, p. 7, 294 So.3d at 61 (citation omitted).

La. C.C. art. 2317 imposes responsibility for damage caused by things in our custody.[19] To establish liability, pursuant to La. C.C. art. 2317, a plaintiff must prove: (1) the thing which caused the injury must be in the care, custody, and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries in question were caused by said defect. *Palermo v. Port of New Orleans*, 2004-1804, p. 18 (La.App. 4 Cir.

---

[18] Strict liability, as defined in La. C.C. art. 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or for the things which we have in our custody.

[19]At the time of Mr. Walker's asbestos exposure, La. C.C. art. 2317 was not enacted. However, the Acts of 1996 combined the previous Civil Code Articles, La. C.C. arts. 660, 667, 2321, and 2322 and subsequently enacted La. C.C. art. 2317.

1/19/07), 951 So.2d 425, 438. "Under a strict liability theory, it is the defendant's legal relationship with property containing a defect that gives a rise to the duty." *Oster v. Department of Transp. and Development, State of La.*, 582 So.2d 1285, 1288 (La. 1991). For purposes of strict liability, custody does not depend upon ownership but instead "involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled." *Haydel v. Hercules Transport, Inc.*, 1994-0016, p. 9 (La.App. 1 Cir. 4/7/95), 654 So.2d 408, 414; *Smith v. Union Carbide Corp.*, 2013-6323, 2014 WL 4930457, at *2 (E.D. La. Oct. 1, 2014) (applying Louisiana law).

The critical issue before this Court is whether Level 3 had custody, care or control over asbestos containing products and materials at Union Carbide, Waterford I and II. Mr. Walker worked as a pipefitter for Level 3.[20] At trial, Mr. Walker submitted multiple exhibits indicating a contractual relationship between Level 3 and Union Carbide. The contracts reveal that Level 3, the contractor, supplied materials and products to employees in constructing multiple pumping stations, underground pipes, and plant expansions at the Union Carbide plant. A construction order was also submitted which instructs Level 3 to change gaskets within multiple lines from white asbestos to teflon-enveloped asbestos filler.

There is no dispute that Mr. Walker was exposed to asbestos containing materials at the aforementioned power plants. Mr. Walker's work as a pipefitter required him to cut and install pipes while tearing out asbestos pipe insulation. He was required to cover multiple pipes with asbestos blankets. This work was ongoing and considered consistent maintenance, a part of Mr. Walker's job as an

---

[20] At the time of Mr. Walker's employment, Level 3 was known as Peter Kiewit & Sons Co. For consistency in this opinion, we will refer to Peter Kiewit & Sons, Co. as Level 3.

17

employee of Level 3. Although we note that Level 3 was not the owner of any of the industrial worksites and testified that it "relied on premises owner to provide a facility free of defects …," we find that Level 3 had custody and control of asbestos containing materials when it instructed pipefitters, such as Mr. Walker, to remove insulations from pipes and create hot welds at various worksites. Thus, we find the trial court did not err in including Level 3 within Jury Instruction No. 4 regarding strict liability.

## EVIDENTIARY RULINGS

In its last two assignments of error, Level 3 contends that the trial court erred in allowing the jury to hear the deposition of Mr. Bourque and in admitting documents from the National Safety Council. A trial court is vested with wide discretion in determining the relevancy of evidence. *Fireman's Fund Insurance Co.*, 2019-0621, p. 9, 294 So.3d at 62. This Court reviews evidentiary issues under an abuse of discretion standard. *Joseph v. Williams*, 2012-067, p. 10 (La.App. 4 Cir. 11/14/12), 105 So.3d 207, 214. We address each evidentiary ruling in turn.

### Mr. Bourque's Deposition

Level 3 argues that Mr. Bourque's deposition should not have been read at trial for the following two reasons: (1) it had no opportunity to properly cross examine Mr. Bourque as the deposition was from a previous trial in 2004; and (2) Mr. Bourque was available for trial, contrary to assertions made by Mr. Walker's counsel. Conversely, Mr. Walker argues that Mr. Bourque's deposition is relevant because it demonstrates that both men were employed by Level 3, worked at Waterford I and II, and subsequently contracted mesothelioma.

We find that allowing Mr. Walker's counsel to read Mr. Bourque's deposition to the jury constitutes harmless error. An error is harmless when it is "trivial,

formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case." *Said v. Federated Rural Elec. Ins. Exch.*, 2021-0078, p. 1 (La. 4/20/21), 313 So.3d 1241, 1242 (citations omitted). An "error is prejudicial when it consists of the exclusion of evidence related to a 'material point in issue' and adversely affects the substantial rights of the party opposed to the exclusion." *Buckbee v. United Gas Pipe Line Co. Inc.*, 561 So.2d 76, 85 (La. 1990).

Although counsel for Mr. Walker misinformed the trial court that Mr. Bourque was deceased and unavailable for trial, the portions of Mr. Bourque's deposition read to the jury were cumulative reiterations of Mr. Walker's live testimony. Mr. Walker indicated that he was employed by Level 3 as a pipefitter at Waterford I and II and Union Carbide from 1967 to 1969 and 1973 to 1974, respectively.[21] Mr. Walker recalled working with asbestos materials and products while employed by Level 3 at the Waterford I, II, and Union Carbide worksites. He specifically testified as to the types of materials he worked with and the number of hot welds he created for Level 3 at the Union Carbide Worksite. He also noted that he often worked with asbestos insulation, provided by Level 3 at each worksite.

Mr. Bourque's deposition also reveals he was an employee of Level 3 during the same time period as Mr. Walker. Mr. Bourque's deposition further indicates that he was pipefitter and Welder at Waterford I, II, and the Union Carbide worksites and recalled working with asbestos containing products and materials. Mr. Bourque's testimony merely corroborated Mr. Walker's live testimony. *See H & O Investments, LLC v. Parish of Jefferson Through Sheng*, 2021-0188, p. 11

---

[21] The jury also viewed Mr. Walker's social security earnings deposit slips indicating he was an employee of Level 3 from 1967 to 1969 and from 1973 to 1974.

(La.App. 5 Cir. 11/24/21), 347 So.3d 1074, 1083 (holding when "evidence is admitted that is merely cumulative of other evidence in the record, any error in its admission is harmless"). There is no indication that the jury solely relied on Mr. Bourque's thirteen page deposition to reach its verdict. Accordingly, even if the trial court's decision to allow the jury to hear the deposition of Mr. Bourque was erroneous, the error is harmless as it did not affect the result reached by the jury or deprive Level 3 of any substantial rights. La. C.E. art. 103; *H & O Investments, LLC*, 2021-0188, p. 10, 347 So.2d at 1083.

### *National Safety Council Documents*

Level 3 asserts that the trial court erred in allowing Mr. Walker to admit documents from the National Safety Council (hereinafter "the NSC documents"). Level 3 also submits that the trial court erred in allowing Mr. Walker to question Jim Schneider about the NSC documents. Mr. Walker counters and contends that the trial court did not err in admitting the NSC documents, citing to La. C.E. art. 803(16) to support its contentions.[22]

The NSC documents, ranging from 1930 to 1960, are based upon field investigations that provide dust counts within industrial and commercial worksites. Mr. Walker presented the documents to establish Level 3's notice of the hazardous dust and the duration of the exposure that was harmful to workers. He further introduced the documents to show that Level 3 likely knew, as far back as the 1930s, that the exposure to asbestos dust could harm workers.

A document must be authenticated or identified as a condition precedent to its admissibility. La. C.E. art. 901(A). Further, an ancient document may be

---

[22] La. C.E. art. 803(16) provides: [s]tatements in a document in existence thirty years or more the authenticity of which is established, or statements in a recorded document as provided by other legislation.

authenticated if it: is in such condition as to create no suspicion concerning its authenticity; was in a place where it, if authentic, would likely be; and has been in existence thirty years or more at the time it is offered. La. C.E. art. 901(B)(8).

We find the trial court did not err in admitting the NSC documents at Mr. Walker's trial. In support of the NSC documents, Mr. Walker submitted an affidavit and a 2001 deposition of the National Safety Council's librarian of fifteen years, Mr. Robert Maracek. Mr. Maracek's affidavit indicated: that he reviewed the exhibits presented to him by Mr. Walker's counsel, that the exhibits were from 1936, and that they were authentic to the best of his knowledge. Thus, the NSC documents were properly admitted pursuant to La. C.E. art. 803(16).

## CONCLUSION

We do not find that the jury's award of general damages to Mr. Walker is so disproportionate to his injury that it shocks the conscience. Finding no legal error, the jury's determination should be upheld. *See PVCA, Inc. v. Pacific West TD Fund LP*, 2020-0327, p. 16 (La.App. 4 Cir. 1/20/21), 313 So.3d 320, 332; *Wainwright v. Fontenot,* 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74; *Wendel v. Travelers Ins. Co.*, 2014-0002, p. 6 (La.App. 4 Cir. 10/8/14), 151 So.3d 828, 834;*Goldstein v. Chateau Orleans*, Inc., 2020-0401, p. 28 (La.App. 4 Cir. 11/12/21), 331 So.3d 1027, 1055. Further, multiple parties were found liable, *in solido*, for Mr. Walker's asbestos exposure. *See Abadie*, 2000-0344, p. 65, 784 So.2d at 90. Thus, the trial court did not err when assessing Level 3 liable for 11/21 shares or determining that Level 3 had custody, care, and control over the asbestos related products used by Mr. Walker during his employment as a pipefitter and welder at various industrial worksites.

## DECREE

21

Accordingly, we affirm the jury verdict and the judgment of the trial court in favor of Mr. Walker and against defendant, Level 3.

**AFFIRMED**